Joseph NAPLES, Petitioner,

v.

E. L. MAXWELL, Warden, Ohio Penitentiary, Respondent.

Civ. A. No. 7157.

United States District Court
S. D. Ohio, E. D.

June 28, 1967.

851

Hubert Lappen, Logan, Ohio, Dan W. Duffy, Cleveland, Ohio, for petitioner.

David L. Kessler, Columbus, Ohio, for respondent.

## OPINION AND ORDER

KINNEARY, District Judge.

This is an application for a writ of habeas corpus. The petitioner seeks relief pursuant to Title 28, United States Code, Section 2241. After two separate jury trials in the Court of Common Pleas of Mahoning County, Ohio, Joseph Naples was convicted of promoting a scheme or game of chance, and receiving

and concealing stolen property. The judgments of conviction were affirmed by the Court of Appeals for the Seventh Judicial District of Ohio, and subsequently by the Supreme Court of Ohio. State of Ohio v. Naples, 175 Ohio St. 550, 196 N.E.2d 591 (1964).

In his appeals, petitioner raised the same question which he presents to this Court. The sole issue before this Court involves the admissibility, during the state court trials, of certain evidence allegedly obtained by an illegal and unlawful search and seizure.

The facts underlying the search and seizure are as follows:

On July 24, 1962, at approximately 11:00 o'clock A.M., Detectives Gerald Brace and Martin Krohn, of the Youngstown Police Department were called in to police headquarters by Lieutenant Michael Carney, who at that time was Acting Chief of the Detective Bureau of the Youngstown Police Department. Lieutenant Carney told Detectives Brace and Krohn that he wanted the detectives to get a search warrant for the Joey Naples' residence because he had information from an informant that there was a secret room in the cellar of this residence.

After this conversation, Detective Brace proceeded to make out an affidavit for the purpose of obtaining a search warrant for the Naples' home. See Exhibit A. The statement that Detective Brace believes, and has good cause to believe, that certain property, to wit: explosives, gambling equipment, guns, narcotics, gambling records and monetary proceeds, stolen goods and any contraband were in a house occupied by Joseph Naples, was not inserted in this affidavit at the request of Lieutenant Carney, nor was it based on any information given to Detective Brace by Lieutenant Carney. Rather, Detective Brace's reasons for placing these items in the affidavit were two-fold. First, he knew that on a previous occasion other officers had searched the home of one of petitioner's brothers and found a number of guns, and further, that there had been a prior search of petitioner's house which turned up some guns. Secondly, on the occasion of the murder of the petitioner's brother, Billy Naples, on July 1, 1962, Detectives Brace and Krohn went to the Naples' home that night to question Joey Naples about the murder. A radio broadcast earlier on this date had circulated the rumor that Billy Naples had been a burglar. In the course of this interview and in response to this rumor, petitioner had stated to the detectives that Billy "was not a burglar; we are gamblers."

After filling out the affidavit, and before executing it, Detective Brace, accompanied by Detective Krohn, applied to The Honorable Martin P. Joyce, a judge of the Municipal Court of Youngstown, Ohio, for a search warrant. After examining Detective Brace's affidavit, Judge Joyce concluded that it was not sufficient to permit the issuance of a search warrant. Whereupon, Judge Joyce asked Detective Brace if he had any other information that might be included in the affidavit to support the issuance of a search warrant. In response, Detective Brace told Judge Joyce that an informant had provided information that there was a secret room in the cellar of the Naples' home. Detective Brace did not identify the informant to the magistrate. He did not identify Lieutenant Carney as the person who received the information from an informant. Nor did the detective disclose to the magistrate where or how Lieutenant Carney's informant got his information. Detective Brace, however, told the magistrate about the statements allegedly made by Joey Naples on the night of July 1, 1962.

The additional information supplied by Detective Brace satisfied the issuing magistrate that probable cause existed. Judge Joyce then proceeded to print in ink the following information which was inserted at the end of the typewritten

matter on the affidavit and search warrant:

> "Informant states that there is a secret room in cellar. Admitted to officers that he is a part of the Naples gambling operation."

Thereafter, Detective Brace signed the affidavit under oath and Judge Joyce issued the search warrant.

After obtaining the search warrant, Detective Brace, Detective Krohn, and Detective Donald Baker went to 605 Carlotta Drive, the home of the petitioner. The petitioner was not at home when the detectives called. Petitioner's wife, however, informed the detectives that her husband was working at the Center Sandwich Shop. At the direction of Detective Krohn, Mrs. Naples called her husband at this restaurant and asked him to come home. Petitioner then talked to Detective Krohn on the phone and asked the detectives to pick him up at this restaurant because he did not have transportation to get home.

Shortly after the telephone conversation the detectives met the petitioner at the Center Sandwich Shop and presented the search warrant to him. On the trip to his residence petitioner told the detectives that his mother and father had a doctor's appointment at 1:00 o'clock P.M. and asked the detectives not to go into the house until after his parents had left because they were along in their years and this search might upset them. The detectives honored petitioner's request, and waited in the back yard of 605 Carlotta Drive until they saw petitioner's parents leave the premises. The detectives then entered petitioner's home and proceeded directly to the cellar. There the detectives began searching for a secret room.

There were two stairways leading into the cellar of the Naples' home. The detectives believed that a secret room would most likely be found under one of these stairways. Under the first stairway they examined, the detectives found a storage closet with shelves to hold canned foods. During the detectives' search of this closet, petitioner offered to remove these shelves. When the detectives were satisfied that the secret room was not located in this closet, they continued their search under the other staircase. The walls under the second staircase were panelled with knotty pine. As the detectives examined this wall, petitioner stated, "I'll give you an ax and tear down the walls if you want to." Detective Krohn continued the search by hitting the panelled wall, when all of a sudden a door popped open, exposing a room and its contents. The contents of this room included a quantity of guns of various kinds, gun silencers, ammunition, a bolex camera, a mink coat, lottery slips, and lottery records. Most of these items were introduced into evidence in the two Common Pleas Court trials.

The petitioner's principal contention is that the affidavit of Detective Brace is insufficient to form a basis for determining if probable cause exists for the issuance of a search warrant. Respondent, on the other hand, asserts not only that the affidavit is sufficient, but that petitioner had consented to the search of his home.

 Under the Fourth Amendment of the United States Constitution a search warrant may not be issued in the absence of a showing of probable cause, supported by oath or affirmation. It is now established that the Fourth Amendment proscriptions are to be enforced against the states through the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962), and that the standard of probable cause for obtaining a search warrant under state law is to be measured by the same constitutional standard which governs the determination of probable cause under federal law.

The affidavit in this case sets forth two specific grounds for Detective Brace's belief that probable cause existed, namely: (1) the police had informa-

tion from an informant that there was a secret room in the cellar of the Naples' home; and (2) petitioner had told Detective Brace and Detective Krohn that he was involved with the family gambling operation.

It is clear that this affidavit is based in part on hearsay. Further, this affidavit contains no affirmative allegation that the affiant, or his unidentified source, had personal knowledge of the existence of a secret room in the cellar of petitioner's home.

■ The federal standard for obtaining a search warrant where hearsay forms the basis of the supporting affidavit was reviewed by the Supreme Court in Aguilar v. State of Texas, 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). The Court there declared:

> Although an affidavit may be based on hearsay information and need not reflect a direct personal observation of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where they claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887,] was "credible" or his information "reliable." Aguilar v. Texas, supra at 114, 84 S.Ct. at 1514.

The holding in Aguilar makes it clear that where the basis of an affidavit is an informant's conclusion, the issuing magistrate must be informed of (1) some of the underlying circumstances upon which the informant based his conclusion—(as in this case that there was a secret room in the cellar of the Naples' home), and (2) some of the underlying circumstances upon which the affiant believed that the informant was credible or his information was reliable.

■ This Court is of the opinion that the first requirement of Aguilar has not been met. The informant's statement, contained in the affidavit, that there was a secret room in Naples' cellar was nothing more than a bare conclusion. There is nothing in this affidavit to inform Judge Joyce of the underlying circumstances upon which the informant arrived at his conclusion. As a matter of fact, the record supports the inference that neither Lieutenant Carney nor Detective Brace was in possession of the informant's source of information.

■ The kind of hearsay appearing in this affidavit is never acceptable to support the finding of probable cause. The danger of using such information is obvious. The informant may have picked up this information from another person who in turn heard it from someone else. Such a statement may be based on mere suspicion, or it might be just a lie created by a vindictive individual in an attempt to slander or embarrass the person against whom the information is aimed.

The Supreme Court's statement in regard to the insufficiency of the affidavit involved in Aguilar applies equally well here:

> The vice in the present affidavit is at least as great as in Nathanson and Giordenello. Here the "mere conclusion" that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," it does not even contain an "affirmative allegation" that the affiant's unidentified source "spoke with personal knowledge." For all that appears, the source here merely suspected, believed or concluded that there were narcotics in the petitioner's possession. The magistrate here certainly could not "judge for himself the persuasiveness of the facts relied on * * * to show probable

cause." He necessarily accepted "without question" the informant's "suspicion," "belief" or "mere conclusion." Aguilar v. Texas, supra, at 113–114, 84 S.Ct., at 1513.

Having determined that the affidavit in the present case is insufficient because the magistrate was not informed of the underlying circumstances upon which the informant concluded that a secret room was in the petitioner's home, the Court finds it unnecessary to reach the question of whether or not the second requirement of *Aguilar* was met.

■ Although the retroactivity of *Aguilar* was not raised by the respondent in briefs or argument, the Court deems it necessary to meet this question in this decision.

Implicit in the resolution of the issue of the insufficiency of the affidavit of Detective Brace to support the finding of probable cause is the Court's determination that Aguilar v. Texas, supra, is retroactively applicable to this state court case in which direct review was exhausted prior to the date of decision in *Aguilar,* but subsequent to the date of decision in Mapp v. Ohio, supra, and Ker v. California, supra. The Court believes and therefore holds that such retroactive application is justified in the instant case because *Aguilar* is a composite pronouncement of the rulings made in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), Jones v. United States, supra, Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), Mapp v. Ohio, supra, and Ker v. California, supra.

Adherence to the strict language in *Aguilar* through a retroactive application, while greatly helpful, is not entirely necessary to support the resolution of the issue of the sufficiency of the affidavit as presented in this case. An adequate basis for finding that the affidavit as finally executed by Detective Brace was insufficient to support the magistrate's finding of probable cause exists in the federal standard for reasonable searches as announced in *Nathanson, Jones* and *Giordenello* and as imposed upon state authorities in *Mapp* and *Ker.*

Attention is now focused on the question of whether petitioner in some way consented to the search.

■ While it is true that consent can validate an otherwise unlawful search, the circumstances which can give rise to such consent have never been satisfactorily determined. However, certain principles are clear. Consent to a search is never presumed, and the burden is upon the government to show that there was no duress or coercion, express or implied, and that the consent was unequivocal, specific and freely and intelligently given. Villano v. United States, 310 F.2d 680 (10th Cir. 1962); Simmons v. Bomar, 230 F.Supp. 226 (M.D. Tenn. 1964). Moreover, mere consent in the face of an announced or apparent intention to search with or without a warrant or permission does not constitute a waiver. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1937); Simmons v. Bomar, supra. It is the respondent's position that petitioner's request to defer the search until his parents left the house and petitioner's later statements in which he offered to assist the detectives in removing the shelves and also offered to get an ax and help the detectives tear down the walls amounted to consent on the part of petitioner. This position is untenable.

■ Nowhere in the record does it appear that petitioner rejected this search warrant presented to him. On the contrary, all of petitioner's actions were consistent with the belief that the warrant was perfectly legal. Moreover, it is difficult to see where there has been any consent. Having served the search warrant, it can properly be assumed that the detectives were going to go ahead with the search regardless of what petitioner said or did. Clearly, petitioner was not in any bargaining position at this time. Hence, it cannot be said that the petitioner's request amounted to a

deal whereby he would consent to the search if the officers waited until his parents left the premises.

▇▇▇▇ In regard to the statements made to the detectives during the search of the cellar, it is only normal for an individual to protest his innocence once he is brought under investigation for a crime. The statements made by petitioner offering assistance to the detectives were merely consistent with his position of innocence.

▇▇▇▇ Where a search, as in this case, has been instituted under the authority of a search warrant, the question of consent cannot arise in the absence of a plain and clear showing that the individual being subjected to the search has refused to recognize that the search warrant is valid and binding. Stated otherwise, unless an accused, after being served with a search warrant, unequivocally states that he believes that the search warrant is unlawful and illegal, he cannot consent to the subsequent search.

All of the statements made by the petitioner occurred after he had been served with the search warrant. There can be no clearer example of a demand made under the color of law or office. Any consent given in such an instance must be almost conclusively presumed to be granted in submission to authority rather than as an understanding and intelligent waiver of a constitutional right.

Whereupon, the Court determines that this petitioner's application for a writ of habeas corpus is meritorious, and therefore the writ should issue.

Accordingly, it is ordered that the petitioner is hereby remanded to the Common Pleas Court of Mahoning County, Ohio, for such further proceedings as may be deemed necessary and proper in accordance with law.

It is further ordered that upon the filing of a bond in the sum of Five Thousand Dollars ($5,000.00) with the Clerk of this Court, the petitioner shall be released from custody. Such bond shall be conditioned upon petitioner's appearance before the Common Pleas Court of Mahoning County, Ohio.

It is further ordered that if no further action be taken by the State of Ohio or the County of Mahoning within sixty (60) days after the filing of this Order, petitioner's release shall be final and unconditional and the bond cancelled.

## APPENDIX

### EXHIBIT A

### AFFIDAVIT FOR SEARCH WARRANT

STATE OF OHIO
County of Mahoning } s.s.:
CITY OF YOUNGSTOWN

IN THE MUNICIPAL COURT
OF YOUNGSTOWN

Before me,_____ JUDGE MARTIN P. JOYCE _____, a Judge of the Municipal Court personally appeared one _____ GERALD BRACE _____ who being first duly sworn according to law deposes and says:

That he believes and has good cause to believe that on or about the ___ 25th ___ day of July _____ 19 62 , in the City of Youngstown, Mahoning County, State of Ohio. Certain property to-wit:_____ Explosives, gambling equipment, guns, narcotics, gambling records, & monetary proceeds, stolen goods and any contraband.

In a house, building or place, described as follows, to-wit:

A certain one story brick building, located at and referred to for street purposes as 605 Carlotta dr.

is occupied by Joseph Naples

The affiant says that he has good reasons to believe and does believe that the aforesaid property or some part thereof is still kept or concealed at the place aforesaid, and that there is urgent necessity for the search thereof to be made in the (nighttime) or (daytime). This affidavit is based on facts as follows:

that affiant has received information which he believes to be reliable and true, that the above named items, or a part thereof, are being unlawfully kept on said premises in violation of law. Informant states that there is a secret room in cellar. Admitted to officers that he is a part of the Naples Gambling operation.

Gerald Brace

Sworn to before me by _____ Gerald Brace _____ affiant and subscribed in my presence this ____ 24th ____ day of ____ July ____, 19 __ 62

Martin P. Joyce
Judge of the Municipal Court

Joseph Naples

25th July 62

## ORDER AMENDING ORDER IN PART

The Order heretofore entered herein with respect to the release of the petitioner from custody is hereby amended as follows:

It is ordered that, and pursuant to the provisions of Title 18 United States Code, Section 3146(a) (3), upon the filing of a bond in the sum of Five Thousand Dollars ($5,000.00) and the deposit in the registry of the court of the sum of Five Hundred Dollars ($500.00) in cash, which sum is here declared to be ten per cent of the amount of the bond, with the Clerk of this Court, the petitioner shall be released from custody. Such bond shall be conditioned upon petitioner's appearance before the Court of Common Pleas, Mahoning County, Ohio.

In all other respects the Order heretofore entered herein shall remain the same and in full force and effect.