James Thomas **FRAZIER**, Petitioner,

v.

Ralph **ROBERTS**, Superintendent of Cummins Farm Unit of the Arkansas State Penitentiary, Respondent.

**No. PB–69–C–57.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

March 3, 1970.

James L. Sloan, Little Rock, Ark., for petitioner.

Joe Purcell, Atty. Gen., State of Ark., Little Rock, Ark., and Don Langston and Mike Wilson, Asst. Attys. Gen., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

In 1967 James Thomas Frazier, petitioner herein, and others were convicted by a jury in the Circuit Court of White County, Arkansas, of unlawfully possessing burglar's tools and gambling equipment. Ark.Stats., §§ 41–1006 and 41–2001. Frazier had three previous felony convictions and was subject to being sentenced under the Arkansas habitual criminal statute, Ark.Stats., § 43–2328. The Circuit Judge sentenced him to imprisonment for five years for possessing burglar's tools and for two years for possessing gambling equipment. The Judge did not specify whether the sentences were to run concurrently or consecutively; the commitment issued by the Circuit Clerk stated that they were to run consecutively.

In this habeas corpus proceeding petitioner contends that his conviction was tainted by denials of due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. He contends that the evidence used against him was the fruit of unlawful searches and seizures, that he was

denied or did not have the effective assistance of counsel, and that the document committing him to the Penitentiary for seven rather than five years is illegal.

The cause has been tried to the Court and submitted on the pleadings, oral testimony, documentary evidence, and complete transcripts of all proceedings in the State courts. A rather full statement of facts is appropriate.

Frazier, James William Moore, and Leon Odom are all known criminals, each of them having a substantial felony record. During the early hours of the night of April 18, 1967, Special Agents of the Federal Bureau of Investigation returning to Little Rock from investigating a bank burglary in the small town of Smithville in Lawrence County in the Northern part of the State observed those three men and Glenn E. Davidson sitting together in Kelley's Grill which is operated in connection with the Americana Motel in Bald Knob. The agents questioned the four men about their presence in Bald Knob at that hour and did not receive satisfactory answers. Local officers were called in and the men were placed under surveillance. At that time the officers had information that the bank at Heber Springs about 40 miles west of Bald Knob was going to be burglarized.

The surveillance associated Frazier and his companions with a 1955 Chrysler parked on the motel premises, to which automobile a U-Haul trailer was attached, and to rooms 110 and 111 in the motel. When the FBI agents first questioned the men, they stated falsely that they had registered in the motel, but they did in fact register while the surveillance was in progress and were assigned the rooms just mentioned.

Taking into consideration the known criminal records of petitioner and his associates, the fact that they were together at night at a motel in a small city with no apparent reason for being there, the fact that the bank at Smithville had been burglarized, and that the officers had information that the bank at Heber Springs was about to be burglarized, the officers came to the conclusion that the men under observation probably had burglar's tools in their possession, and that a warrant should be obtained to search the motel rooms, the car, and the trailer.

Sheriff John Davis of White County applied for such a warrant to Norris Fox, the Mayor of Bald Knob, an officer authorized by law to issue search warrants. Neither Sheriff Davis nor Mayor Fox is learned in the law, and the services of the Prosecuting Attorney or his Deputy were not available at the time. The Mayor or the Sheriff had printed forms of search warrants and affidavits for warrants of arrest. One of the forms of affidavit was converted into an affidavit for a search warrant.

The Sheriff executed the converted affidavit. He stated simply that he had "reason to believe" that three of the suspects, including petitioner, had burglar's tools in their possession in the car, the trailer, or the motel rooms. The affidavit set forth no facts tending to show that there was probable cause for the Sheriff's belief or for the issuance of the warrant. The Mayor issued a search warrant covering the car, trailer, and motel premises; the warrant did not command or expressly authorize a night time search.

The Sheriff returned to the motel and served his warrant. A search of the trunk of the car revealed vise grips, a drill, and two pair of gloves. A search of the trailer revealed that it contained a magnetized dice table, batteries, and dice designed to be used on a magnetized table.

The equipment found in the trunk of the car was seized, but the suspects were not arrested at the time although surveillance was continued. The gambling equipment was not seized because the warrant did not refer to such equipment.

Shortly after the search Mrs. Leon Adam drove up to the motel and parked near the Chrysler. A few moments later the four men entered the Chrysler and

drove away from the motel. They were stopped by the officers; the car was searched again, and another drill was found. The suspects were then placed under arrest.

Thereafter, the Sheriff went back to the Mayor and obtained another warrant to search the trailer for the gambling equipment which the officers had seen there already. The warrant was issued on the basis of an affidavit essentially the same as the first one, except that it referred to the trailer only and to gambling equipment. Again, the affidavit stated no facts except that the Sheriff "had reason to believe" that there was gambling equipment in the trailer.

On the following day the Prosecuting Attorney of White County filed a criminal information charging Frazier, Moore, and Davidson with the offenses that have been mentioned. For some reason Odom was not charged.

The defendants employed W. M. Herndon of North Little Rock and the late Sol C. Russell of Little Rock to represent them. Neither Herndon nor Russell lacked experience in the trial of criminal cases in Arkansas.

The defendants filed motions to suppress evidence which were heard at some length by Circuit Judge Elmo Taylor. The defendants contended that the warrants were invalid, that they were not supported by oath or affirmation, that the searches were made before the warrants were issued, and that there was no probable cause for the searches or for the issuance of any warrants.

The only witnesses called at the hearing were for the defendant Davidson, who owned the car, and Sheriff Davis. Mayor Fox was present in the courtroom but was not called upon to testify. Most of the evidence was devoted to the question of the existence of probable cause. While the warrants were introduced in evidence, the affidavits were not, and it does not appear that counsel for the defendants read them or were familiar with their contents.

The motions to suppress were overruled, and the case went to trial in due course. During the trial the motions to suppress were renewed pro forma and were again overruled. The principal defense at the trial was that the tools were not burglar's tools, and that the equipment found in the trailer was not gambling equipment.

As indicated, the defendants were convicted, and they appealed to the Supreme Court of Arkansas. They were represented on appeal by Mr. Herndon and by Mr. Darrell Hickman. The judgment of the Circuit Court was affirmed. Moore v. State, 244 Ark. 1197, 429 S.W.2d 122. The contention of the defendants that the searches and seizures were illegal and unconstitutional was considered at some length and rejected.

Thereafter petitioner employed his present attorney, Mr. James L. Sloan of Little Rock, to attack his conviction collaterally. Mr. Sloan sought and obtained leave from the Supreme Court of Arkansas to file a petition for post conviction relief in the sentencing court under Criminal Procedure Rule 1 of the Supreme Court of Arkansas. The petition was filed in due course, and the Circuit Judge set the matter down for hearing. When the petition came on for hearing, counsel offered to prove that the searches and seizures antedated the warrants and were otherwise illegal. Taking the position that the question of the legality of the searches had been finally adjudicated both in the Circuit Court and in the Arkansas Supreme Court, the Circuit Judge refused to hear the evidence proffered on petitioner's behalf and overruled the petition.

██ Under Criminal Procedure Rule 1 an order disposing of a petition or motion filed under that Rule is appealable. Petitioner prayed and was granted an appeal from the order overruling his petition. However, petitioner made no effort to perfect his appeal and filed his original petition for a writ of habeas corpus in this Court.

The original petition alleged in substance that the searches were made prior to the issuance of the warrants, that the warrants were not properly supported by oath or affirmation, and that the seven year commitment was illegal. It was further alleged that petitioner and his fellows had been represented so incompetently in connection with the original proceedings that they had in effect been denied the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States as carried forward into the Fourteenth Amendment.

Respondent, represented by the Attorney General of Arkansas and his assistants, moved to dismiss the petition for alleged failure on the part of petitioner to exhaust his available State remedy of appealing from the order overruling his Rule 1 petition as required by 28 U.S. C.A. § 2254.

Petitioner countered by pointing out that if he had to appeal again to the Supreme Court of Arkansas and if the order of the Circuit Court should be reversed, the case would probably simply be remanded for an evidentiary hearing; that if the Circuit Court should again overrule the Rule 1 petition, petitioner would have to appeal a third time to the Supreme Court of Arkansas, and that the State court process would take months, if not years, to complete during all of which time petitioner would be confined in the Penitentiary.

An affidavit attached to the original petition in this Court indicated that petitioner might have available to him evidence that was not available when the original case was tried. While the Court was not unsympathetic with the petitioner's problem about delay, the Court was most anxious that the State courts evaluate the new evidence in advance of any consideration by this Court. A hearing on the motion to dismiss developed the possibility that the Supreme Court might be persuaded to issue a writ of mandamus directing the Circuit Court to hold an evidentiary hearing, as the Supreme Court had done on at least one other occasion. Brown v. Taylor, 245 Ark. 435, 432 S.W.2d 751. Accordingly, the Court reserved ruling on the motion to enable counsel to apply for mandamus to the Arkansas Supreme Court.

The application was made, and counsel filed a full brief in support of it. The State resisted the application, and on October 23, 1969, it was denied without opinion by a divided court. Thereupon counsel filed in this Court an application for further consideration of the original petition and for leave to file an amendment to the petition.

This Court was not willing to require petitioner to litigate further in the State courts and proceeded to overrule the motion to dismiss; petitioner was also allowed to amend his petition. The amendment having been filed, respondent answered on the merits. The Court issued a formal pre-trial order, set the case for hearing, and the hearing was held as scheduled.

The contentions advanced by petitioner in this Court involve some questions which in and of themselves are simply questions of State law. However, the Court does not believe that those questions can be divorced entirely from the federal constitutional questions presented, particularly the claim of inadequate representation of petitioner by his original attorneys. It will be necessary, therefore, to consider the questions of State law at least to some extent.

Petitioner came to the hearing contending primarily, as he would have done at the Rule 1 hearing if the Circuit Court had been willing to hear his evidence, that the officers searched the car and trailer and seized the tools and gambling equipment before they obtained the warrants authorizing the searches. However, the witness upon whom petitioner principally relied went back on what he had said in his affidavit attached to the original petition, and the Court now finds that the searches and seizures did not antedate the warrants, and that the chronology of events was that which has been set forth already. Apart from the complaint about the commitment, peti-

tioner's remaining contentions may be summarized as follows:

1. That there was no probable cause for the initial search.

2. That Arkansas law does not authorize the issuance of a warrant to search for burglar's tools as such unless they themselves are stolen or embezzled.

3. That the night time search of the car, trailer, and rooms was violative of Arkansas law.

4. That the affidavits for the warrants were insufficient to meet constitutional standards.

5. That the failure of petitioner's original attorneys to drive those points home in the original proceedings in the State courts was one of constitutional magnitude and denied petitioner due process of law.

Respondent denies that any of those contentions has merit. He insists that petitioner and his fellows had a fair trial in the Circuit Court and were adequately represented in that Court and in the Arkansas Supreme Court. He contends that the warrants were valid; alternatively, he urges that even if they were invalid, the officers had probable cause to search without a warrant.

It is obvious, of course, that if the first search was illegal, the second search was *a fortiori* illegal because the gambling equipment was discovered in the course of the first search. Counsel have so agreed. Hence, as far as the searches are concerned, the Court is concerned primarily, although not entirely, with the validity of the first search.

█ In passing upon the constitutional questions raised by petitioner the the Court is required in the last analysis to exercise its own independent judgment. While the considered judgment of the Supreme Court of Arkansas is entitled to respect, it is not binding, nor is the Court limited to the evidence made of record in the State Courts. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

## I.

█ The Court finds that there was probable cause to believe that petitioner and the other men had burglar's tools in their possession.

As has been seen, petitioner and three of his companions were known criminals. One or more of them resided in Little Rock or North Little Rock some 50 or 60 miles south of Bald Knob. Bald Knob is not a tourist resort or a place where travelers from Little Rock ordinarily spend the night. The suspects had no apparent reason for being there in company with each other and during the night; their explanation of their presence was not satisfactory and was to some extent false. The officers had reason to believe that a bank burglary was about to be perpetrated at Heber Springs, and the bank at Smithville had just been burglarized.

In those circumstances the Court thinks that a peace officer of reasonable prudence and judgment would have had probable cause to believe that these men had burglar's tools in their possession and would have been justified in seeking a warrant to search for them, assuming that Arkansas law authorized the issuance of a warrant to search for such items, a point presently to be discussed.

Before leaving the subject of probable cause, the Court finds it convenient to consider respondent's contention that the initial search can be justified on the basis of probable cause apart from the validity of the original warrant. The Court cannot accept that contention.

██ It is well established that the mere existence of probable cause does not automatically authorize officers to make a warrantless search. In situations other than exceptional probable cause does not dispense with the necessity for a warrant; without probable cause, a valid warrant cannot be obtained. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. Warrantless searches of automobiles are justified at times by the

urgency of the situation—the danger that the vehicle may be driven away or that contraband hidden in it may be destroyed.

While the first search involved in this case included a search of the car and trailer, the situation does not appear to have been one of any urgency. Officers were in the vicinity in some force; they apparently felt that they could take the suspects into custody at will, as indeed they later did. Burglar's tools are not as readily disposable as are drugs and illicit liquor. Sheriff Davis clearly thought that he needed a warrant and the Court agrees with him.

## II.

As to whether Arkansas law authorizes the issuance of a warrant to search for such items as burglar's tools, this case points up, as did Haire v. Sarver, E.D.Ark., 306 F.Supp. 1195, recently decided by this Court, the need in Arkansas for a clarification of State law relative to search warrants, and the need of Arkansas law enforcement officers, prosecuting attorneys, and defense-counsel for more education in that field of the law.

Arkansas has no statute, comparable to Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which deals comprehensively with search warrants. Arkansas does have a number of statutes authorizing the issuance of search warrants in specific situations or with respect to certain types of property.[1] Section 15 of Article 2 of the Arkansas Constitution of 1874, like the Fourth Amendment to the Constitution of the United States, prohibits unreasonable searches and seizures and pro-

vides that no search warrant shall issue save upon probable cause supported by oath or affirmation.

Petitioner's contention that Arkansas law does not authorize the issuance of a search warrant for burglar's tools and that the service of the first warrant at night was illegal is based upon the premise that the warrant was sought and obtained pursuant to section 15 of Chapter 45 of the Arkansas Revised Statutes of 1838, which now appears as Ark. Stats., § 43–201.[2] That section authorizes the issuance of a warrant to search for stolen or embezzled property. Section 43–202 provides that ordinarily a warrant issued under section 43–201 is to be served during the day time, but section 43–203 authorizes a night time search upon "positive proof" that stolen or embezzled property is located in a particular house or building.

If petitioner's premise is correct, then his conclusion that the warrant was not authorized and that the night time search was illegal is also correct because sections 43–201 et seq. relate solely to stolen or embezzled property, and there has never been any contention in this litigation that the items seized in the car had been stolen or embezzled.

But, petitioner's difficulty is that his premise cannot be sustained. Neither the affidavit nor the warrant refers in any way to section 43–201 or to any other particular statute. In Gouled v. United States, 255 U.S. 298, 308, 41 S.Ct. 261, 65 L.Ed. 647, it was pointed out that the common law authorized the issuance of warrants to search for property or items of certain kinds, including burglar's tools. And there is dictum in Albright v. Karston, 206 Ark. 307, 176

---

1. Under Arkansas law a search warrant may issue in a case involving cruelty to animals, Ark.Stats. § 41–423, or cruelty to children, ArkStats. § 41–1110, or the operation of a house of ill fame, Ark. Stats. §§ 41–3216 and 41–3218. A warrant may issue for a search for stolen or embezzled property, Ark.Stats. § 43–201, or for gambling devices, Ark.Stats. §§ 41–2009 and 41–2010, in cases involving violations of the so-called "Machine Gun

Act," Ark.Stats. § 41–4515, and in cases involving property lost by wreck or rising waters, Ark.Stats. § 21–315.

2. Incidentally that particular statute seems to be the only Arkansas search warrant statute that appears in the Arkansas Code of Criminal Procedure, Ark.Stats., Title 43. The other search warrant provisions are geared to substantive criminal statutes.

S.W.2d 421, to the effect that Justices of the Peace in Arkansas have authority to issue search warrants with respect to "devices used in the commission of felonies * * * that they may be used as evidence, and that they may be destroyed, if they are such as have been outlawed by statute." (p. 315 of 205 Ark. p. 425 of 176 S.W.2d.)

If the warrants involved in this case had not been upheld specifically by the Supreme Court of Arkansas, an interesting question might be presented as to what, if any, common law jurisdiction to issue search warrants exists in Arkansas today in view of the Legislature's specific dealings with such warrants in particular types of cases. The Court does not reach that question, however, since the Court is of the opinion that the action of the Arkansas Court in approving the first warrant establishes, at least inferentially, that there was a legal basis for its issuance, assuming that other requirements were met.

### III.

The Court agrees with petitioner that the affidavits for the warrants did not meet the requirements of cases like Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and Aguilar v. Texas, supra. Those cases hold that the Constitution requires an affidavit for a search warrant to set out sufficient facts to justify the magistrate before whom the affidavit is made to determine by the exercise of his own independent judgment that there is probable cause for the issuance of a warrant.

Here the Sheriff had probable cause, and it seems that he imparted his information to the Mayor. But, he was not under oath when he did so, and his affidavits show nothing but his belief about the tools and the gambling equipment.

If that infirmity had been brought to the attention of the Circuit Court, that Court might or might not have suppressed the evidence. Had it refused to do so, and had it been affirmed by the Supreme Court of Arkansas, this Court, in the exercise of its independent judg-

ment, would have had no choice but to set the conviction aside.

But, as has been seen, that infirmity was not brought to the Circuit Court's attention, and the affidavits were not introduced in evidence as should have been done, a fact commented upon by the Arkansas Supreme Court, 244 Ark. at 1199–1200, 429 S.W.2d 122. The question, then, is whether this Court in this collateral proceeding is required to set aside the conviction on account of a defect in the affidavits which could and should have been brought to the attention of the State courts. This, in the Court's estimation, is the most important question in the case, and it is a difficult and delicate one.

While it is the duty of federal courts to protect federal constitutional rights and to redress deprivations of them even when they take place in State criminal proceedings, still due regard for the rights of the States to enforce their criminal laws in their own courts and for the orderly and final disposition of criminal cases requires that the power of federal district courts in this area be exercised sparingly, particularly when such a court is called upon to upset a State conviction on the basis of evidentiary material not before the State courts.

The Court must start with the proposition that the failure of petitioner's original attorneys to get at least the first affidavit into the record was a serious and inexplicable mistake. During the hearing on the motions to suppress counsel referred more than once to the affidavits; he asked the Sheriff where they were; the Sheriff replied that he supposed that they were still in the Mayor's office. The Mayor was present. Had counsel pursued the matter one step further, the affidavits presumably would have been forthcoming. The matter was not pursued further; it was simply dropped.

But, the Constitution of the United States does not protect criminal defendants from mere mistakes of coun-

sel, even though they be serious ones. And where a federal constitutional issue having factual aspects is before a State court in a criminal trial or hearing and where evidence relating to the issue is readily available to counsel but he fails to introduce it, the Court does not think that the defendant later can use that failure as a basis for a collateral attack on his conviction in a federal court unless counsel's failure in the circumstances amounted to a denial of the effective assistance of counsel within the constitutional meaning of that term.

In the very recent case of Scalf v. Bennett, 8 Cir., 408 F.2d 325, 327–328, the Court of Appeals said:

"* * * Habeas corpus relief on the ground of incompetency of counsel or denial of effective counsel will be granted 'only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.' White v. McHan, 386 F.2d 817, 818 (5th Cir. 1967); Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965); See Maye v. Pescor, 162 F.2d 641, 643 (8th Cir. 1947). * * *"

■ The Court has read carefully the transcripts of the hearing on the motion to suppress and of the trial itself. Those transcripts do not reflect any overall incapability of presentation on the part of either of the two experienced lawyers who represented petitioner and his co-defendants. Certainly they do not show any lack of zeal or fidelity on the part of counsel. On the contrary, counsel put up a good fight on the issue of probable cause and on the merits of the case, and, apart from the mistake of not putting the affidavits into the record, counsel did a good job.

In that connection it may be pointed out that while the jury assessed peti-

tioner and his companions a sentence of three years on the gambling equipment charge, the statutory maximum, the assessed punishment on the burglar's tools count was only two years imprisonment, the minimum, whereas the statutory maximum punishment is imprisonment for ten years.[3]

On the evidence the jury was clearly justified in convicting the individuals on trial. The case does not present any exceptional circumstances; it is not a capital case, and the sentence ultimately imposed on petitioner was not a particularly long sentence as felony sentences go in Arkansas.

Taking into consideration all of the facts and circumstances this Court is simply not persuaded that it is required by Townsend v. Sain, supra, or by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, or by any other ruling case to set petitioner's conviction aside on account of the mistake of counsel that has been discussed, and the Court declines to do so.

## IV.

■ At an early stage of the proceedings the Court took the position that petitioner's complaint about the commitment did not present a substantial federal question, and, indeed, it does not. However, the Court has considered it for some possible bearing on the claim of inadequate representation.

■ As stated, the sentencing Judge did not specify whether the sentences imposed on petitioner were to run consecutively or whether they were to run concurrently. Such being the case, they ran concurrently, and the commitment issued by the Clerk is in conflict with the actual judgment and sentence of the Court. The Court does not consider that conflict to be the fault of original counsel.

In any event, the error in the commitment does not require that the conviction be set aside, and this Court has no

3. Petitioner's punishment assessed by the jury for possession of burglar's tools was increased by the Court under the habitual criminal statute.

jurisdiction to correct the commitment. Assuming that petitioner's sentence actually totals five years, he has not served that long and is not now entitled to be released.

Let an order denying the petition as amended be entered.