James Thomas **FRAZIER**, Appellant,

v.

Ralph **ROBERTS**, Superintendent of the Cummins Farm Unit of the Arkansas State Penitentiary, Appellee.

No. 20222.

United States Court of Appeals, Eighth Circuit.

April 7, 1971.

Rehearing Denied May 24, 1971.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

PER CURIAM.

Petitioner-appellant James Thomas Frazier and two others were convicted by a jury in the Circuit Court of White County, Arkansas, for possession of burglary tools and gambling equipment in violation of Ark.Stats. §§ 41–1006 and 41–2001 respectively. The facts of the case appear at length in Moore v. State, 244 Ark. 1197, 429 S.W.2d 122 (1968), and Frazier v. Roberts, 310 F.Supp. 504 (E.D.Ark.1970).

In the district court it was agreed that the admissibility of crucial evidence against petitioner Frazier depended entirely upon the validity of a search warrant authorizing the search of an automobile, attached trailer, and certain motel rooms, which warrant was obtained by local police from Norris Fox, Mayor of Bald Knob, Arkansas, and *ex officio* Justice of the Peace. Mayor Fox issued the warrant on the basis of a concededly deficient affidavit supplemented by unsworn oral information given by the requesting officers. The State courts and the district court below held that these communications to Mayor Fox, taken together, bore objective information sufficient to support a finding of probable cause under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), and Aguilar v. Texas, 378 U.S. 108, 110, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[1]

Petitioner contends, *inter alia*, that the Fourth Amendment requires that probable cause may be established only by information related to the magistrate "on Oath or affirmation," that the additional testimony given by the requesting officers was not in fact sworn, that the warrant therefore was illegal and should not have issued, and that since his con-

James L. Sloan, Little Rock, Ark., for appellant.

Joe Purcell, Atty. Gen., by Mike Wilson, Asst. Atty. Gen., Little Rock, Ark., for appellee.

1. Because we reverse on another ground, we avoid considering whether, had all of the information given been under oath, as required, the district court properly could have found that such constituted probable cause.

viction resulted from the fruits of such an illegally issued warrant, his conviction should be set aside. We agree with the trial court that for all practical purposes defendant has exhausted State court remedies, having twice been to the Arkansas Supreme Court. By the time further State court proceedings and further evidentiary hearings are had, were we to remand, defendant's five-year prison sentence for his 1967 conviction will have been substantially served. The trial court was apprehensive over this fact. On the first appeal to the Arkansas Supreme Court the thrust of the appellant's argument went to an unlawful search and seizure because of lack of probable cause. The Arkansas Supreme Court rejected this claim. Moore v. State, 244 Ark. 1197, 429 S.W.2d 122 (1968). Encompassed in or at least as a companion to this contention, though apparently not specifically argued or raised by counsel at the time, is the question of whether the information given the magistrate by the officers requesting the warrant was under oath so as to validate the warrant and thus the search. In a later post-conviction State court hearing, referred to as a Criminal Rule 1 proceeding, the Arkansas trial court regarded the issue of unlawful search and seizure as settled and foreclosed by the prior appeal and refused to hear evidence on the issue. It was thereafter that this habeas corpus proceeding was commenced in the United States District Court, after the commencement of which the trial judge suspended proceedings until appellant could appeal to the Arkansas Supreme Court from the denial of his Rule 1 post-conviction hearing. Such application was made and denied without opinion. The United

States trial judge then held an evidentiary hearing and stated in his memorandum opinion:

"This Court was not willing to require petitioner to litigate further in the State courts and proceeded to overrule the motion to dismiss [the habeas corpus proceedings]."

Earlier in his memorandum opinion the trial judge said:

"Petitioner countered by pointing out that if he had to appeal again to the Supreme Court of Arkansas and if the order of the Circuit Court should be reversed, the case would probably simply be remanded for an evidentiary hearing; that if the Circuit Court should again overrule the Rule 1 petition, petitioner would have to appeal a third time to the Supreme Court of Arkansas, and that the State court process would take months, if not years, to complete during all of which time petitioner would be confined in the Penitentiary."

Having reached the conclusion he did on this issue, in our opinion the trial judge should then have proceeded to grant the writ of habeas corpus based on the evidence he received at the hearing without further concern over considerations of comity or interference with State court jurisdiction.

 It is clear that the Fourth Amendment permits the warrant-issuing magistrate to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant. United States v. Berkus, 428 F.2d 1148 (8th Cir. 1970).[2] In this case, such additional testimony is crucial to the validity of the warrant

2. 4 Fed.R.Crim.P., Rule 41(c), which governs issuance of search warrants to authorized officers of the United States by U. S. Commissioners or courts of record, requires that facts sufficient to establish probable cause be disclosed in the sworn affidavit of the requesting officer. This precludes the use of additional testimony,

sworn or otherwise, as a basis for issuing a warrant in cases governed by the Federal Rules. See also Fed.R.Crim.P., Rule 4(a), which requires that federal arrest warrants be issued solely on the basis of facts appearing in complaints executed on oath pursuant to Rule 3.

because the affidavit alone contained no objective facts whatsoever.[3]

The Fourth Amendment to the United States Constituion reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation,* and particularly describing the place to be searched, and the persons or things to be seized." [Emphasis added]

It is certain from the text that the intention was to condition the issuance of warrants upon two requirements: (1) that there be a showing of "probable cause, supported by Oath or affirmation," and (2) that "the place to be searched, and the persons or things to be seized" be described on the face of the warrant with particularity. Thus the Supreme Court has held that a magistrate may find probable cause only "from facts or circumstances presented to him under oath or affirmation." Nathanson v. United States, 290 U.S. 41 at 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). Lower federal cases on the point are rare, since most searches in federal criminal cases are conducted under rule 41 of the Federal Rules of Criminal Procedure.[4] The nearly unanimous view is that the Fourth Amendment requires that only information related to the magistrate on Oath or affirmation is competent upon which to base a finding of probable cause; that unsworn oral statements may not form a basis for that decision. Lopez v. United States, 370 F.2d 8 (5th Cir. 1966); United States v. Wroblewski, 105 F.2d 444 (7th Cir. 1939); Sparks v. United States, 90 F.2d 61, 64 (6th Cir. 1937); United States ex rel. Boyance v. Myers, 270 F.

Supp. 734, 738 (E.D.Pa.1967) rev'd on other grds., 372 F.2d 111 (3rd Cir. 1967). State decisions reaching the same conclusion as to the meaning of the Fourth Amendment and/or similar State constitutional provisions include Walton v. State, 245 Ark. 84, 431 S.W.2d 462 (1968); Tygart v. State, Ark., 451 S.W.2d 225 (1970); State v. Oliveri, 261 Iowa 1140, 156 N.W.2d 688, 694 (1968); State v. Spier, Iowa, 173 N.W.2d 854 (1970); People v. Asaro, 57 Misc.2d 373, 291 N.Y.S.2d 613 (1968); State v. Racanelli, 74 N.J.Super. 420, 181 A.2d 420 (1962); Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885 (1966).

These holdings are not inconsistent with Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965), cert. den. 384 U.S. 980, 86 S. Ct. 1879, 16 L.Ed.2d 690. In that case, the language of the Fourth Amendment was construed by this court as follows:

"Before a search warrant may issue two steps must be taken. The application must be supported by 'Oath or affirmation, * * * describing the place to be searched, and the persons or things to be seized.' Next, the Fourth Amendment requires a showing of 'probable cause.' Even though the affidavit of the officer is not constitutionally sufficient, in itself, to support a finding of probable cause, it nonetheless fills the requirements of a proper 'Oath or affirmation' describing the place to be searched and the thing to be seized. In addition, it can be considered some evidence to support a finding of the necessary probable cause. Aguilar v. State of Texas, supra, however, demands something more than this bare affidavit. The 'something more' was supplied by Officer McAdams in his statement to the magistrate that he personally observed

---

3. The affidavit, introduced as exhibit 1 in the habeas corpus proceeding below, recites in pertinent part:

"I, John Davis, do solemnly swear that I have reason to believe in said County of White did [sic], on the 18 day of April, 1967 that James Odom,

Tommy Frazier and James Moore have in their possession burglary tools in a 1955 Chrysler, a trailer, and in rooms 110 and 111 of the Americana Motel, Bald Knob, Arkansas."

4. See footnote 2, *supra.*

the odor of marijuana outside of the described premises."

353 F.2d at 426. Although the positive statement does not appear in the opinion, it seems clear from the above quote that the court considered the "something more" to have been a statement under oath. A bare unsworn assertion for which the informing officer takes no moral or legal responsibility is of course not sufficient. See Annot., 51 A.L.R. 852. We do not here concern ourselves with the wisdom or empirical efficacy of such a requirement; our task is simply to read the Constitution.

■ As the Eighth Circuit has suggested in Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966), whether information was given on Oath or affirmation within the meaning of the Fourth Amendment is to be considered a question of fact:

"The officer's testimony did not make it entirely clear whether the oath taken by him [on execution of the affidavit] was merely to the truthfulness of the formal affidavit or to that of his oral statements as well. The District Court, however, regarded the evidence on hearing of the motion to suppress as sufficiently indicative that the oath has had application to both the executed instrument and the oral statements."

368 F.2d at 3. See also United States ex rel. Boyance v. Myers, *supra;* State v. Oliveri, *supra.* The mere fact that the Oath was taken after the oral statements were made does not, of itself, render them unsworn, where the officer clearly understood, upon taking the Oath, that it pertained to his prior oral statements as well as the affidavit. Lo-

pez v. United States, *supra,* 370 F.2d at 11.[5] In this case, however, the trial court found, with ample support in at least four places in the record, that oral testimony of the requesting officers was not contemporaneously considered by those officers to be given on Oath, stating in his memorandum opinion:

"Here the Sheriff had probable cause, and it seems that he imparted his information to the Mayor. But, he was not under oath when he did so, and his affidavits show nothing but his belief about the tools and the gambling equipment."

■■ Since the oral testimony was not given under "Oath or affirmation" as the Fourth Amendment requires, the magistrate could look only to the affidavit for facts from which to judge probable cause. The affidavit was plainly inadequate, and the warrant was thus issued in violation of the Fourth Amendment. All subsequent searches, arrests, and inculpatory statements were fruits of that illegality. On the basis of the foregoing, we have no choice but to direct the issuance of the writ of habeas corpus, subject to the conditions hereinafter stated.[6]

■ The often difficult factual question of whether contemporaneous oral statements were given on Oath or affirmation will not arise in cases governed by Fed.R.Crim.P., Rule 41(c), nor in those states which require that a written record be maintained of all information upon which the magistrate based his decision to issue a warrant. Since the Fourth Amendment has not been read to require the maintenance of such a record, see United States v. Berkus, *supra,* apparently there remain jurisdic-

---

5. Black's Law Dictionary, 4th Ed., page 1220, lists as one definition of "Oath": "An external pledge or asseveration, made *in verification of statements made, or to be made,* * * * in evidence of the serious and reverent state of mind of the party." [Emphasis added]

6. *Petitioner raises several other issues which, in view of our disposition of the case, we need not resolve. It should be*

noted, however, that the power of the federal court in a habeas corpus proceeding is limited to consideration of *federal constitutional* issues. Questions of State law or nonconstitutional federal law are not cognizable in such a proceeding, even where the State system has refused on procedural grounds to reach them. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

tions which permit issuance based upon affidavits and unrecorded sworn oral testimony. As we noted in *Berkus*, the preferable procedure is to preserve a written record of information before the magistrate in order to afford expeditious judicial review. The court commends the procedure used in Naples v. Maxwell, 271 F.Supp. 850 (S.D.Ohio 1967),[7] wherein the magistrate after eliciting additional necessary information from the requesting officer by oral testimony, appended a transcript of such testimony to the affidavit prior to its execution on Oath by the officer. This eliminates the problem of establishing that such oral testimony was given on Oath or affirmation and preserves a record upon which reviewing courts may test the magistrate's determination of probable cause.

The judgment appealed from is reversed on the ground that evidence obtained as a result of an illegal search was received at the trial. The case is remanded to the federal trial court for further proceedings consistent with the views expressed in this opinion. The State is granted thirty days from the date this judgment becomes final to re-try Frazier. The federal district court upon appropriate showing may grant a reasonable extension of such time. If the defendant is not re-tried within the time hereinabove fixed or within any extension of such time as may be allowed, a writ of habeas corpus shall be granted and the defendant shall be released. Reversed and remanded.

## ON PETITION FOR REHEARING

The State of Arkansas has filed timely (1) a motion to substitute Bill Steed as the appellee herein and (2) a petition for rehearing. The motion to substitute is granted, it appearing that the original appellee Ralph Roberts no longer is connected with the Arkansas State Penitentiary System and that Bill Steed now is the Acting Commissioner of Corrections of the State of Arkansas.

The petition for rehearing is denied. The State's brief on rehearing admits unequivocally that:

"* * * the search warrants authorizing the searches that were effected by the local officers were invalid, that the evidence obtained by those searches should have been suppressed; and that without the unlawfully obtained evidence appellant could not have been convicted."

Further, no claim is made that the case involves any question of exhaustion of state remedies, nor the "waiver" of federal constitutional questions in the State court. Rather it is contended:

"* * * the case goes far beyond the case of appellant as an individual, and the State views it as a most serious one on account of its impact on state court convictions generally and on account of the adverse effect that it may have on federal-state relationships in the delicate field of law enforcement in this turbulent period of our nation's history."

The trial court in his opinion stated, Frazier v. Roberts, 310 F.Supp. 504, 511 (E.D.Ark. 1970):

"* * * The question, then, is whether this Court in this collateral proceeding is required to set aside the conviction on account of a defect in the affidavits which could and should have been brought to the attention of the State courts. This, in the Court's estimation, is the most important question in the case, and it is a difficult and delicate one.

\* \* \* \* \* \*

The Court must start with the proposition that the failure of petitioner's original attorneys to get at least the first affidavit into the record was a serious and inexplicable mistake. * *

But, the Constitution of the United States does not protect criminal de-

7. Reversed on other grounds, 393 F.2d 615 (6th Cir. 1968), certiorari denied 393 U.S. 1080, 89 S.Ct. 850, 21 L.Ed.2d 772, rehearing denied 394 U.S. 967, 89 S.Ct. 1301, 22 L.Ed.2d 569.

fendants from mere mistakes of counsel, even though they may be serious ones. * * *"

This court is not unmindful of, and at all times does all within its province to preserve and protect, the delicate federal-state relationship in the criminal law enforcement field. We cannot, however, ignore patent federal constitutional questions. What the State in effect asserts is that in the posture of the case in the Arkansas State Court, Frazier (plaintiff here and defendant in the State court prosecution) failed to raise a fundamental constitutional question through error or mistake of his counsel; that under the decision law of the State of Arkansas such is fatal and any attempt at a post-conviction remedy in the State court will perforce be abortive because of the Arkansas rule that such failure bars a defendant later from raising the question; that the federal courts should honor this precept of Arkansas State law even though the rights now asserted are deeply imbedded in the United States Constitution. We cannot subscribe to this view under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and their prolific progeny.

The doctrine of "deliberate bypass" is not apposite here, as where a state court defendant understandably and knowingly foregoes the privilege to vindicate his federal claims in state court. See Harris v. Brewer, 434 F.2d 166 (8th Cir. 1970); Pope v. Swenson, 395 F.2d 321 (8th Cir. 1968); Mitchell v. Stephens, 353 F.2d 129, 140 (8th Cir. 1965). Lay, D., Problems of Federal Habeas Corpus Involving State Prisoners, 45 F.R.D. 45, 59–61.

■ The inadvertent failure to raise a constitutional claim at the appropriate juncture or to lay the proper evidentiary foundation for the presentation of such a claim, regardless of its effect as a waiver of later litigation or review in the State system, will not preclude inquiry into that claim in a federal habeas corpus proceeding.

The district court as above quoted found failure to assert the claim or to produce evidence to support such claim was a mistake of counsel and the record contains nothing to suggest a "deliberate bypass". Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), raising the question by way of dictum of planned trial strategy which "backfires" as constituting a deliberate waiver or bypass is not applicable here where there is no such contention nor evidence in the record to support such.