James William MOORE, James Thomas Frazier and Glenn E. Davidson v. STATE of Arkansas

5321                                    429 S. W. 2d 122

Opinion delivered June 3, 1968

[Rehearing denied July 15, 1968.]

*W. M. Herndon* and *Darrell Hickman,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants bring this appeal from the judgment of the White Circuit Court convicting them of possession of burglary tools and possession of gambling equipment. Eight points are urged for reversal. The facts pertinent to a decision in this case will be taken up as applicable to the points for reversal, which have been renumbered for purposes of this opinion.

(1) Appellants assert error in the trial court's failure to suppress certain evidence. This contention is based upon the alleged invalidity of the search warrants due to the alleged absence of an oath or affirmation and the asserted lack of probable cause for their issuance.

The record reflects that there were three searches involved and that, with regard to the first, the Sheriff of White County obtained a search warrant to search appellants' motel rooms, the car in which they were traveling and the trailer attached to the car. The sheriff's testimony at the hearing on the motion to suppress and at the trial showed that he had information that appellants were at the motel and that they had burglary tools in their possession. He further stated that his decision to obtain a search warrant was reached after a period of surveillance of appellants' activities in and around the motel room and the car and trailer.

At the hearing on the motion to suppress, the State introduced the search warrants pursuant to which the searches were made. Although appellants subpoenaed the sheriff, several officers who had been involved in the search, and the justice of the peace who issued the warrants, only one person, appellant Glenn Davidson, was called in behalf of appellants. His testimony amounted to little more than a narration of the searches and arrests. No attempt was made to show facts indicative of the alleged lack of probable cause. While appellants contended that the warrants had been issued without oath or affirmation, the only evidence on this point was the testimony of the sheriff, who stated that an affidavit as to the facts and circumstances showing probable cause had been made.

In *Albright* v. *Karston,* 206 Ark. 307, 176 S. W. 2d 421, we held that where the search warrant is regular on its face and there is no proof that the "oath or affirmation" was not made prior to its issuance, there is a presumption that all things essential to its validity

have been done. It was therefore the duty of appellants to come forward with evidence sufficient to rebut the presumption of validity. Additionally, we note the prevailing view that the burden of proof on a motion to suppress is on the accused. *Anderson* v. *United States,* 344 F. 2d 792 (10th Cir. 1965); *People* v. *Williams,* 20 N. Y. 2d 388, 283 N. Y. S. 2d 169 (1967). In *Wilson* v. *State,* 268 P. 2d 585 (Okla. Crim. 1954), the Oklahoma court, in noting that the burden was on defendant on his motion to suppress, said:

"The burden of proving the invalidity of a search warrant rests on the defendant, and where he files a motion to suppress evidence or objects to the introduction of evidence on the ground the search warrant is not valid, he should produce the affidavit and warrant in evidence in support of such motion or objection, or account for the failure to produce and offer other competent evidence to show invalidity."

See, also, 22A C. J. S. Criminal Law §§ 578 and 657(32) (a); Varon, *Searches and Seizures,* § 6(c). On the state of the facts in the case at bar, we feel that appellants have failed to meet the burden incumbent upon them to show that the first warrant was invalid. The evidence seized as a result of the first search was, therefore, admissible and the motion to suppress properly overruled.

With regard to the second search, appellants contended there was no probable cause therefor. After the first search, Sheriff Davis and his men withdrew from the premises but continued to keep appellants under surveillance, since the sheriff had information that another car was to make contact with appellants for the purpose of transferring burglar tools. During this period between the first and second searches, the wife of a companion of appellants came to the motel. Having been identified by the officers, she subsequently left.

Thereafter, appellants got into the car and appeared to be leaving town when they were stopped. On this occasion the appellants were ' arrested and taken into custody. The result of the search was that a Craftsman Drill, not discovered during the first search, was found.

On the record before us, we feel that the second search was lawful and that the trial court was correct in its ruling that the evidence seized pursuant thereto was admissible. While there are numerous cases which state that a "return" search, conducted on the basis of the warrant issued for the original search, is not permissible, these cases seem to involve situations where the officers have completely abandoned the premises for a substantial period of time. See, *e. g., State* v. *Moran,* 103 W. Va. 753, 138 S. E. 366 (1927); *Coburn* v. *State,* 78 Okla. Crim. 362, 148 P. 2d 483 (1944); *McDonald* v. *State,* 195 Tenn. 282, 259 S. W. 2d 524 (1953); *State* v. *Pina,* 94 Ariz. 243, 383 P. 2d 167 (1963). Such is not the case here. The sheriff and his men, after making the first search and on information that there was to be a subsequent contact with appellants, withdrew from the premises, but maintained constant vigil until such time as the arrests and second search were made. The second search was but a continuation and consummation of the first. There was reasonable cause to believe that other evidence, and possibly other persons, would be involved. The reasonableness of a search in any case must be decided "upon its own facts and circumstances." *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374 (1931). We cannot say that this record reflects an unconstitutional invasion at the time of the second search.

There is another ground on which we find the second search to be lawful, and that is that it constituted a search incident to a lawful arrest. The first search had been made and the objects (consisting of two pairs of vice grips, a hand drill, and a pair of rubber gloves) lawfully seized. The officers thus had probable cause to

arrest appellants for the crime of possessing burglary tools. Ark. Stat. Ann. § 41-1006 (Repl. 1964). While it might be better procedure to make an arrest immediately upon seizure of evidence, we hesitate, on the peculiar facts and circumstances of this case, to say that it was unreasonable for the officers to delay the arrests until such time as it appeared that no other parties were involved. The arrests being lawful, the officers acted within the bounds of reason in searching the immediate premises under the control of appellants. *Harris* v. *United States,* 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399 (1947); *United States* v. *Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950). Although there is sufficient justification for holding that the arrests occurred as soon as the officers stopped the car in which the appellants were traveling, this would appear to be insignificant, since, in any event, the search and the arrests were "substantially contemporaneous." *Stoner* v. *California,* 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964); *State* v. *Hoover,* 219 Ore. 288, 347 P. 2d 69, 89 ALR 2d 695 (1959). Moreover, the fact that we are here concerned with the search of an automobile is significant. The courts, both federal and state, have long distinguished between searches of dwellings and vehicles. In the case of vehicles, the validity of the seizure is not dependent upon the right to arrest, but rather upon the reasonable cause the seizing officer has for the belief that the contents of the automobile offended against the law. *Carroll* v. *United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *Burke* v. *State,* 235 Ark. 882, 362 S. W. 2d 695; *Mann* v. *City of Heber Springs,* 239 Ark. 969, 395 S. W. 2d 557. For the reasons herein stated, we find that the second search was valid and reasonable under the circumstances of this case.

Appellants contended also that there was impropriety in the third search which was carried out on the following day pursuant to another search warrant. Apparently, the basis for their contention is that there existed no probable cause for issuance of the warrant.

The record indicates that during the course of the previously described searches, the sheriff observed a peculiar looking table which was wired, two large batteries, and another box containing "some kind of device to operate the magnetism on the table." His suspicion that a gaming device had been uncovered was buttressed by the discovery of several pairs of dice in the suitcase of one of the appellants. The sheriff did not immediately take any action with regard to the table and the supporting apparatus, but waited until after the second search, at which time he radioed in to headquarters, instructing that a separate search warrant be obtained pursuant to Ark. Stat. Ann. § 41-2009. The sheriff testified that he subsequently made an affidavit stating the facts constituting probable cause.

As in the case of the warrant for the first search, appellants have made no attempt to show that probable cause was lacking for the issuance of the warrant. It must therefore be held that they failed to meet the requisite burden of proof. Moreover, it is clear from the facts above stated that the gaming table was observed in open view at a time when the officers were lawfully on the premises conducting the previous searches. It has been held many times that where contraband articles are identified without a trespass on the part of the officer, there is not a "search" that is prohibited by the constitution. *Russell* v. *State,* 240 Ark. 97, 398 S. W. 2d 213; *United States* v. *Lee,* 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202 (1927); *Ker* v. *California,* 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). From all that appears of record, the table could have lawfully been seized at the time it was observed. The officers should not be condemned for taking the added precaution of obtaining a search warrant. The table and supporting apparatus were properly admitted into evidence.

(2) Appellants next contend that the evidence seized was not burglary tools or gambling equipment. We can quickly dispose of this contention insofar as it relates to the gambling equipment, as we feel that a clear case

for the jury was made by the State. Appellants rely on *Burnside* v. *State,* 219 Ark. 596, 243 S. W. 2d 736, in which we reversed a conviction where the evidence involved consisted of a tape recorder, a ticker or teletype machine and a radio transmitter. We there said that where the device is not a gaming device *per se,* there must be evidence that the equipment was *used* as a gambling device before there can be a conviction under Ark. Stat. Ann. § 41-2001.

We feel that appellants reliance is misplaced, as the table here involved was *per se* a gambling device. The sheriff testified that, when he entered the trailer during the course of the first search, he saw "gambling equipment." He also called it a "crap table." Further, he described the device as a "* * * large table * * * with large batteries and this remote control which mechanized the top of the table." He also referred to a "diagram" and "instructions of how to hook it up." Pictures introduced in evidence indicated that it was no ordinary table but was improvised so that a metal bar beneath the top could be magnetized at will with a control device. The top of the table was boxed in by a rim which was approximately eight inches higher than the surface of the table. While there was some evidence that the table and the supporting apparatus were not so connected as to be presently operative, we deem this insignificant. The statute prohibits the keeping of any gaming device. The fact that the device is inoperative as a "crooked" or "rigged" device has no bearing on its status as a gaming device, although the fact that a device is peculiarly wired and outfitted is evidence that it is a gaming device. Under the facts of this case, we feel that the question was properly submitted to the jury.

Appellants contended that the evidence seized as a result of the first and second searches did not constitute burglary tools. This contention has caused us much concern, as it has brought to our attention an unsettled area of our law. There are three cases, involving the

sufficiency of the evidence to sustain a conviction for possessing burglary tools, which we feel are in need of reconciliation. These cases are: *Satterfield* v. *State*, 174 Ark. 733, 296 S. W. 63; *Prather* v. *State*, 191 Ark. 903, 88 S. W. 2d 851, and *Gossett* v. *State*, 242 Ark. 593, 414 S. W. 2d 631.

In the *Satterfield* case the tools involved were: two bolt cutters, four common hoe files, one ordinary hammer, two Stilson wrenches, a flashlight and a pistol. As noted in the *Gossett* case, the conviction there was reversed. We note the statement in the opinion to the effect that the tools were not burglary tools, but we do not take this case to stand for the proposition that the set of tools there involved were incapable, as a matter of law, of being held to be burglary tools. Our interpretation is guided by the court's action in affirming the overruling of a demurrer to the indictment and in remanding the case for a new trial. In holding that the demurrer to the indictment was properly overruled, the court said, in effect, that the charge of crime was sufficient. Reversal was because of a deficiency in the proof. Therefore, the case was remanded in order to give the State a chance to show that these were tools that were "adapted, designed or commonly used" by burglars for the purposes named in the statute rather than tools that *might* be so used. The act of remanding the case for a new trial clearly indicates that the court felt that, if properly shown to be commonly used by burglars, the tools could be classified as "burglar tools."

In the *Prather* case the officers seized a sledge hammer with a shortened handle, a shortened punch, an ordinary screw driver, caps used to set off explosives, nitroglycerin, gloves or mittens, electric fuses, four pistols with extra cartridge clips, and a flashlight. While this array of tools might more easily be shown susceptible to use by burglars in their trade than one less nefarious, the court laid its emphasis on language to the effect that a fact question was involved:

> "Perhaps, no fixed rule or announcement should be made as a criterion for guilt or innocence, except *that in every instance the matter under investigation should be determined as a matter of fact,* controlled or explained by all of the conditions, circumstances, and such pertinent collateral matters as might be present." [Emphasis added]

The court noted that the fact that the tools might be capable of legal uses was not controlling. The State is entitled to establish facts tending to prove that the defendant had in his possession "such a group or selection of tools, devices, or materials as might be found to be more nearly suitable for breaking into houses, or opening locked doors and windows, or by explosive forces opening safes or strong boxes, where valuables might be stored or kept, than for any lawful purpose." In conclusion it was said that "a charge of this kind is like any other charge, one that may be or may not be susceptible of proof; in other words, it is a question of fact, which, when proved beyond a reasonable doubt, and so determined by a jury, there is little left for review on appeal."

*Gosser* v. *State, supra,* involved the seizure of combination of tools consisting of a tire tool, two screw drivers, a lug wrench and a bar used to remove tires from car wheels. The conviction was there reversed, the court noting that all the tools were such as were commonly used in connection with the operation of automobiles, except possibly screw drivers, which are common implements in every home or shop. There was an understandable absence of any testimony tending to show that the tools were "more nearly suitable" for use by burglars than for lawful purposes. On the facts of the case, the import of the statement that *Prather* was "not controlling or even persuasive" is clear.

A consideration of these three cases gives rise to certain general principles applicable in burglary tool

cases where the question is the sufficiency of the evidence:

1. When it is shown, or is obvious, that the particular combination or group of tools in question is such that their use in lawful occupations or for legitimate purposes is common and ordinary and that many people might well be expected to have such a combination of tools in their possession at any time in the circumstances under which they are found, their possession cannot be a violation of the statute, regardless of the fact that they might conceivably be used for breaking and entering buildings or any of the other structures named in the statute.

2. When it is shown that the particular combination of tools consists of implements commonly used for the purpose of burglarizing any of the structures named in the statute and it is not shown, and is not obvious, that the particular combination of tools is such as is commonly used in any lawful occupation or in general use for legitimate purposes, such that the tools will likely be found in the lawful possession of numerous persons, in the circumstances under which they are found, a jury question as to whether the possession of the tools is in violation of our statute arises.

In the case at bar, the sheriff, who was the only witness to testify at the trial, stated that any one of the tools found might be used in some ordinary, lawful occupation. However, he also testified that such a combination of tools was adapted to, and commonly used for, breaking and entering. Even though he stated that a safe or vault could not be entered with these tools without a hammer and punch, he stated specifically that they were sufficient to afford entry into a building and were commonly used for that purpose. There is nothing in the record to indicate that this particular combination of tools was common to any particular occupation. While there were no explosives or weapons in the combination

here, the court in *Prather* clearly pointed out that no particular item or circumstance determined whether the combination constituted the prohibited tools.

It is notable that among the items found there was a pair of rubber gloves. Gloves were also found among the tools in *Prather,* and it was there pointed out that, while gloves are used in many lawful pursuits, it was common knowledge that gloves are employed by burglars to avoid leaving finger prints. We find that a jury case was presented. The jury having determined that burglary tools were involved, there is "little left for review on appeal."

(3) Appellants' next contention is that the trial court erred in failing to discharge the jury and declare a mistrial after the prosecuting attorney mentioned the gambling device which had been in the lobby of the courthouse since the day before the trial. The record shows that the trial of this case had been scheduled for the day before, but that it had to be rescheduled due to the crowded docket. We feel that the trial court properly denied the motion for a mistrial for the reason that there is nothing to indicate that appellants were prejudiced by the presence of the table in the courthouse. There is no evidence that any of the jurors saw the table, which had to be left on the first floor of the courthouse because of its weight. Further, as the jury was later permitted to view the table, we fail to see how appellants were prejudiced, even if we assume that it had been seen prior to trial.

(4) Appellants claim prejudicial error in the trial court's failure to declare a mistrial after Sheriff Davis, in answer to the question, "You knew Mr. Frazier?", replied, "I knew him by reputation. I knew about him in Woodruff County." The basis for their contention is that the reply, in the context used, indicated that the sheriff had reference to criminal activity of appellant Frazier. We cannot agree. The innuendo urged by appellants would require a strained view of a common ex-

pression used to signify merely that a person is known only casually. We cannot say that such expression amounted to evidence of bad character or that appellants were prejudiced in any way.

(5) Appellants assert as error the giving of two instructions in terms of Ark. Stat. Ann. §§ 41-1006 (possession of burglary tools) and 41-2001 (keeping a gambling device) on the alleged grounds that the instructions amounted to comments on the evidence and that the court, by so wording the instructions, ruled as a matter of law that the appellants were guilty of the felonies charged. We do not get to the merits of this contention for the reason that the alleged error has not been properly preserved for appeal. The record reveals that appellants objected generally to the trial court's charge and specifically to the two instructions on the ground that, as a matter of law, the evidence seized was not burglary tools or gambling equipment. There was no other specification of error. As to the specific objection, we have held under point (2) that the evidence was sufficient to go the jury. The allegations of error now asserted for reversal were not embraced in the objections to the instructions, nor were they carried forward in the motion for a new trial. Under these circumstances, the matters asserted are not now subject to review by this court. *Cassell* v. *State,* 242 Ark. 149, 412 S. W. 2d 610; *Ford* v. *State,* 222 Ark. 16, 257 S. W. 2d 30.

(6) We next consider appellants' contention that statements by the prosecuting attorney in his closing argument were prejudicial in that they referred to appellants' failure to testify. This court has said in numerous cases that a defendant's election not to testify in his own behalf is a privilege which the law affords him, and that it is reversible error for the prosecutor to use words and phrases calculated to call such fact to the jury's attention. *Miller* v. *State,* 239 Ark. 836, 394 S. W. 2d 601; *Miller* v. *State,* 240 Ark. 590, 401 S. W. 2d 15. In the two cases just cited, the reference to the fact that

appellants failed to take the stand was clear. In the first case the prosecutor argued the instructions of the trial court and said: "You are instructed this is a privilege to them to either testify or not to testify." In the latter case, the statement was: "The defendant has chosen not to take the stand and that is his privilege * * *." Reversal in such instances is clearly required, as there could scarcely be a more obvious comment on the defendants' failure to testify. The statements involved in the case at bar, however, are more nearly akin to those in *Davis* v. *State,* 96 Ark. 7, 130 S. W. 547, and *Cascio* v. *State,* 213 Ark. 418, 210 S. W. 2d 897. In the former case, the prosecutor had said: "* * * it is undisputed and undenied and he cannot deny it." This court held that the statement was an expression of opinion as to the weight of the testimony, not a comment on defendant's failure to take the stand. In the *Cascio* case, the statement was: "What explanation have they made of that?" which we held not to be susceptible of the meaning urged by the appellant. In the present case, the prosecuting attorney, in the course of his closing argument, made the following statements: The case was "uncontradicted and undenied"; "I will leave that because the record is bare"; "There is nothing else in here except the testimony and proof of the sheriff"; "There has been no proof as to who [certain equipment] belonged to, the testimony was that nobody would claim it, nobody has acquired it, nobody has come here today to acquire it"; and "If I was picked up with [the equipment introduced into evidence], there would be some explanation of what it was doing in my car and what I was doing with it." We feel that the expressions are all attributable to the weight to be given to the evidence, and that in no instance was the jury's attention called to the fact that appellants failed to testify.

Under their point number IV, appellants contended that there had been no voluntary consent to the searches described in our point number (1). In view of the fact

that we have held the searches legal on other grounds, we find it unnecessary to take up that argument.

The judgment is affirmed.

BROWN, J., concurs; JONES, J., dissents in part; BYRD, J., dissents.