We agree: HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.

Charles C. HARRIS *v.* STATE of Arkansas

CR 75-40                                       543 S.W. 2d 459

Opinion delivered November 15, 1976
(In Banc)

*Putman, Davis & Bassett,* by: *W. B. Putman* and *Ronald E. Bumpass,* for appellant.

Jim Guy Tucker, Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Charles C. Harris and Lonny McGuire were jointly charged, tried and convicted at a jury trial with the possesscon of marijuana with intent to deliver and were sentenced to ten years in the penitentiary. This is an appeal by Harris in which he has designated two points he relies on for reversal as follows:

I

The lower court erred in refusing to grant appellant's motion for a severance because:

A. Voir dire by separate counsel for Appellant's co-defendant and the remarks of the Trial Court deprived Appellant of his option as to whether or not his failure to take the stand would be brought to the attention of the jury.

B. Testimony by a State's witness as to statements made by the co-defendant tended to incriminate Appellant in violation of his rights under the Sixth Amendment to the Constitution of the United States.

II

The lower court erred in refusing to grant a mistrial because of the state's comment in closing argument on

the failure of appellant to take the witness stand.

The facts appear as follows: James R. Adkins, special agent for the Federal Drug Enforcement Administration, while working under cover, made arrangements with Harris and McGuire for the purchase of 100 pounds or marijuana for $10,000. Delivery was made on the highway outside the corporate limits of Fayetteville resulting in the arrests and subsequent convictions of Harris and McGuire.

Harris and McGuire were represented at the trial by separate attorneys. The appellant Harris's attorney filed a motion for severance on the ground that he anticipated the state's witnesses would quote statements made to them by McGuire which would tend to incriminate Harris; and that to deny the motion for severance would deny Harris the protection afforded him under the Sixth Amendment to the Constitution, the right to be confronted by witnesses, and the right to cross-examination. The motion was denied by the trial court.

The errors assigned under point I-A pertain to the voir dire examination of three prospective jurors, Van Duesen, Miller and Shepherd by McGuire's attorney, Mr. Carlisle. The entire record on this point appears as follows:

MR. CARLISLE: Q. I will not belabor this, but there is one matter I would like to inquire about. Mr. Putman has, in general terms, described that when a defendant walks into this courtroom he is, first of all, presumed to be innocent, and until such time as the State proves beyond a reasonable doubt all of the elements of the offense with which he has been charged he is presumed innocent. As you know, I represent Lonny McGuire. In your deliberations would any of you give any weight to the fact that a defendant did not take the witness stand in his own behalf as any circumstance against him? The laws of the State of Arkansas say that a defendant is not required to take the witness stand; that the burden is upon the State of Arkansas to prove him guilty beyond a reasonable doubt. Now, some people have a little bit of difficulty in understanding that the fact that a defendant does not speak in his own behalf should not be held

against him, and, in fact, go the other way and say to themselves, "Well, he didn't get on the witness stand and deny it, so that is some inference of guilt." That last statement is incorrect under the law and I want to see how you all feel about it. Do you follow my thought?

MRS. VAN DUESEN: Yes.

MRS. MILLER: (She nods her head affirmatively.)

MR. SHEPHERD: (He nods his head affirmatively.)

Q. How about you, Mr. Shepherd? Would you hold it against the defendants in this case if one or both of them did not take the witness stand? Would that infer to you in any way their guilt?

MR. SHEPHERD: No.

Q. How about you, Mrs. Van Duesen?

MRS. VAN DUESEN: No, I don't think so.

Q. Mrs. Miller?

MRS. MILLER: No.

Q. And the testimony offered by the State of Arkansas in this case will primarily come from three (3) Federal Agents who will identify themselves as law enforcement officers of the United States Government, in the Federal Bureau of Narcotics. Do either of you have any tendencies to believe a witness merely because he happens to be a policeman?

MR. SHEPHERD: No.

MRS. VAN DUESEN: Not necessarily.

MRS. MILLER: (She shakes her head negatively.)

Q. It is sometimes felt that just because a man works in a law enforcement capacity or is a policeman, whatever you want to call it — of course these men are non-uniformed and proof will show they were undercover agents, commonly referred to as "narcs," but they are policemen and some people think that policemen should always be believed, regardless of the circumstances.

MR. GIBSON: Your Honor, I am going to interpose an objection. This is argument.

THE COURT: I believe that it is argument. Rephrase your question.

MR. CARLISLE: I haven't asked the question, Your Honor.

THE COURT: I know, but I think you should limit it to a direct question.

MR. CARLISLE: Q. The mere fact that these three (3)

gentlemen are law enforcement officers, would that give you any reason to give their testimony more weight than you would any other witness?

MR. SHEPHERD: (He shakes his head negatively.)

THE COURT: Let me ask it this way. I am going to tell you that any witness on the stand should be treated the same, as far as evaluation of his testimony, regardless of his sex, color, age or religion.

MRS. VAN DUESEN: Yes, we understand.

THE COURT: You shouldn't believe him or disbelieve him because he is a police officer, *or if he is the defendant and takes the stand*. You shouldn't arbitrarily believe him or disbelieve him. In other words, the same set of criteria is applied to any witness regardless of occupation, sex, creed or color.

MR. CARLISLE: Q. My question is —

THE COURT: Can you follow that?

All three answer: Yes.

MR. CARLISLE: Q. Can you follow the Court's instruction?

All three answer: Yes.

THE COURT: Are they acceptable?

MR. GIBSON: Yes.

THE COURT: Are they acceptable, Mr. Putman?

MR. CARLISLE: Your Honor, I will excuse Mr. Shepherd.

THE COURT: Mr. Putman, are they acceptable to you?

MR. PUTMAN: Yes, Your Honor, the other jurors are acceptable.

THE COURT: All right. Call one more name.

(The Court proceeds to interrogate the next three (3) jurors. Mr. Putman approaches the bench.)

THE COURT: Do you have an objection?

MR. PUTMAN: No, Your Honor, I have no objection. I simply have another matter that I want to take up with the Court at this juncture.

(Out of hearing of jurors:)

Comes now the defendant, Charles Harris, and renews his motion for a severance earlier made before this Court, which was of course taken down by the court reporter, for the reason that in his voir dire interrogation of the jurors, Mr. Carlisle has referred to the conse-

quences and possible reactions of the jurors in the event that the defendant or a defendant did not take the stand. We have the option, of course — Mr. Harris is entitled to the opition of mentioning or not mentioning this to the jury, just as is given to him the option of having the Court mention or not mention the fact that he did or did not take the stand. This deprives us of this option because it has already been brought to the jurors' attention. Their attention has already been drawn to the fact that the defendants or a defendant may not testify. We feel this deprives Mr. Harris of his option to leave this totally unmentioned throughout the trial, and consequently calls for severance.

THE COURT: Overruled.
MR. PUTMAN: Note our exceptions.
THE COURT: Please stand Mrs. Canup, Mrs. Collins and Mr. Fennell. (Emphasis supplied.)

As to the first part of the appellant's assignment under point I-A, no objection was made to the voir dire at the time it was made and the appellant accepted the jurors without challenge. The appellant has demonstrated no adverse or antagonistic interest between himself and his codefendant that would have demanded a severance. See *Lewis and Wren* v. *State,* 220 Ark. 914, 251 S.W. 2d 490. We conclude that under the state of the record before us, the trial court did not abuse its discretion in refusing to grant the appellant's motion for a severance because of the questions propounded by McGuire's attorney on voir dire. To hold otherwise would make it possible to force a severance in every case, as a matter of trial strategy, where codefendants are represented by separate attorneys.

The second portion of appellant's point I-A pertaining to the remarks of the trial court related back to the voir dire of the three prospective jurors. The record is not clear as to whether the entire jury panel was in the courtroom when these jurors were being questioned on voir dire. It would appear, however, that the entire panel was in the jury room and were being called three at a time for voir dire. In any event, it appears to us that when the trial court held attorney Carlisle's interrogation as argumentative and directed him to rephrase his inquiry by asking a direct question, the trial court was eminently correct. We are of the opinion, however,

that after attorney Carlisle did rephrase his inquiry as above set out, the question, as rephrased, should have been sufficient. After the prospective jurors to whom the question was propounded had indicated a negative answer, the trial court inquired in a different manner as above set out.

It might appear at first glance that the phrase "or if he is the defendant and takes the stand," would not be a prejudicial comment on the appellant's failure to testify in the context of all that was said; but, this statement could have planted in the minds of the jury that the testimony of federal narcotic agents was exactly of the quality and verity as that of the accused; and, that although they should not arbitrarily believe or disbelieve either witness because he is a defendant or a police officer, if the police officer testified and the defendant did not, they would be left with no discretion in not believing the police officer and that to do so would not be arbitrary.

This phrase "or if he is the defendant and takes the stand" might be considered nonprejudicial when considered in the context it was given if it were standing alone but such was not the case. During the testimony of the appellant's mother who testified at some length as to appellant's family background; as to his work with underprivileged children; as to adjustment problems he encountered following the death of his father, and as to her own efforts to assist this 25 year old appellant in solving his problems by sending him to visit a friend in Brazil; the record then appears as follows:

> Q. Living with you in Houston, did he have an opportunity to see some of the Mexican-American children who were poor and had to live under deprived and—?
> MR. GIBSON: Your Honor, I am going to have to object. He's leading the witness. It's second-hand knowledge—.
> THE COURT: I think what he saw *is for him to say,* rather than what she knows about what he did.
> MR. PUTMAN: I'm going to take exception to the Court's remarks. (Emphasis supplied.)

The trial court apparently felt that the attorney was going rather far afield in questioning appellant's mother about the opportunity the appellant had to see poor and deprived

Mexican-American children while living with her in Houston and certainly we are of the opinion the trial court had no intention to suggest to the jury that the appellant should testify. But when the two statements, "if he is the defendant and takes the stand," and, "what he saw is for him to say," are considered together, we cannot say they were not prejudicial to the appellant. We must remember that this was the trial court speaking for the benefit of the jury.

The state's .witnesses had very definitely connected the appellant with the wholesale delivery of contraband but it is entirely possible that the jury may have considered the evidence, pertaining to the poor and deprived Mexican-American children the appellant may have seen in Houston, very material in assessing the penalty in this case. The court's two statements could have left the impression with the jury that even though the appellant was not *required* to testify in his defense, and even though that fact should not be held against him; if the appellant did desire to take the witness stand and testify his testimony, under the law as stated by the court, would be just as valid and carry as much weight as the testimony of anyone who testified against him and that it was incumbent upon him to testify rather than depend upon someone else's knowledge and testimony as to what he did. We conclude that the judgment must be reversed and the cause remanded for a new trial.

We deem it unnecessary to discuss appellant's point I-B because it is not likely to arise again on retrial and we find no merit to the appellant's point II. That portion of the closing argument of the prosecuting attorney, as set out in the appellant's argument under his point II, appears as follows:

> Possession? You heard thé three agents get on this stand and say that the hundred pounds of substance was taken from these two defendants out there on Cato Springs Road on April 29th, 1974. *There has been absolutely no testimony to contradict that.* I don't think that is even an issue at this point. They possessed it; a hundred pounds — Approximately one hundred pounds—.

The appellant argues that that portion of the prosecuting attorney's argument, as above italicized, constituted prejudicial

comment upon appellant's failure to testify, but we disagree with the appellant. See: *Edens* v. *State*, 235 Ark. 996, 363 S.W. 2d 923; *Moore* v. *State*, 244 Ark. 1197, 429 S.W. 2d 122 and compare with *Curtis* v. *State*, 89 Ark. 394, 117 S.W. 521.

The judgment is reversed and the cause remanded for a new trial.

HARRIS, C.J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. It seems to me that the majority, in reversing the trial court has lost sight of appellant's point for reversal. It seems to me that the reversal is based upon the trial court's comments, either as comments on the evidence or as comments on the defendant's failure to testify, rather than upon the court's failure to grant a severance. The majority properly finds no error in the voir dire examination by counsel for appellant's co-defendant, as it related to the right of a defendant to refrain from testifying.

No objection was made by appellant to the court's remarks relating to the credibility of witnesses. The court's remarks were not specifically made the basis of the renewal of appellant's motion for severance, which came after appellant had failed to challenge any juror so interrogated and had found two of them acceptable. When the court inquired of appellant's attorney, he stated that he had no objection. I do not interpret the motion as having been directed to the court's remarks. The motion, as I see it, was based on the interrogation by McGuire's attorney, not about the police officer's testimony, but about the effect of a defendant's failure to testify. I am simply unable to follow the majority's statement of possible prejudice, its speculation that somehow the trial judge told the jury that the testimony of the federal narcotics agent was exactly of the same quality and verity as that of the accused, or the premise that the judge's remarks in any respect related to the credit to be given an officer's testimony if defendant did not testify or that "they would be left with no discretion in not believing the police officer and that to do so would not be arbitrary," whatever that means.

It is also difficult for me to relate the remarks of the trial judge made during the voir dire to his remarks in later ruling

on the prosecuting attorney's objection that appellant's mother was attempting to communicate "second-hand knowledge" to the jury. When the trial judge said "what he saw is for him to say," appellant did not renew his motion for severance. He simply took exceptions to the court's remarks. There was no motion for admonition or mistrial. Therefore, I find no basis for reversal.

Appellant's point 1B is not a basis for reversal either. It is based upon testimony of Federal Narcotics Agent Adkins that after he had met appellant and his co-defendant at a Gulf service station, and arranged for their delivery of 100 pounds of marijuana to him, he met the two defendants and another person and was taken in an automobile driven by McGuire to a place where they met appellant Harris and, during this trip McGuire identified a vehicle they passed, saying that "that was Harris, and that he would follow." Adkins stated that his conversation in planning the delivery was primarily with Harris and this trip was a part of the plan. It later developed, according to Adkins, that the vehicle identified by McGuire stopped and that Harris alighted from it. Putting aside the question of admissibility of the statement as that of a co-conspirator, there was nothing prejudicial about it and McGuire did not, as appellant contends, become a witness against him.

I would affirm the judgment.

I am authorized to state that the Chief Justice joins in this opinion.