Cecil HILL and Chris HILL *v.*
STATE of Arkansas

CR 78-88                                    571 S.W. 2d 228

Opinion delivered October 2, 1978
(Division I)

*Gene Worsham,* for appellants.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

GEORGE HOWARD, JR., Justice. Appellants were charged by information with two counts of the offense of keeping a

gaming device under Ark. Stat. Ann. § 41-3253 and § 41-3254 (Repl. 1977) which make it unlawful to: ". . . set up, keep, or exhibit any gaming table or gambling device . . . of the like or similar kind, or of any other description although not herein named . . . devised or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost."

Appellants were tried to a jury and pursuant to a verdict of guilty on each count against the appellants, Cecil Hill was assessed a fine of $1,000.00 and imprisonment for one year on each count to run concurrently; and a fine of $1,000.00 and imprisonment for one year were also imposed on Chris Hill, to run concurrently.

For reversal of their convictions, appellants have alleged the following grounds:

1. The court erred in denying appellants' motion for directed verdict.

2. Intimidation of defense witness constituted a denial of due process.

3. The trial court erred in failing to declare a mistrial after the prosecuting attorney in his final argument referred to the appellants as "these cheaters," "outsiders," and in alluding to the defendants' failure to take the stand or testify in their own defense.

We are persuaded that the trial court erred in denying the motion of Chris Hill for a directed verdict, at the close of the State's case, inasmuch as the record before us fails to show that Chris Hill had an interest in either the alleged gambling devices in question or an interest in the house from which the devices were obtained by officers pursuant to a search warrant. Accordingly, we reverse the action below as it relates to Chris Hill.

We are persuaded, from a careful review of the record before us, that no error was committed relative to Cecil Hill. Consequently, we affirm the action below as far as Cecil Hill is concerned.

Cecil Hill has argued that the trial court committed error in denying his motion for a directed verdict at the close of the State's case. However, it is clear from this record that pursuant to a search warrant authorizing the Federal Bureau of Investigation and local law enforcement officers to search a residence located on Lake Hamilton in Garland County, which was owned by Cecil Hill and under his auspices at the time, officers took possession of a "Honey" amusement-type pinball machine designed for the purpose of effecting the play of a game of chance; a "Juice Joint" also designed for the purpose of effecting the play of a game of chance; and other gambling paraphernalia, including playing cards and dice.

Special Agent Richard T. Lind, of the Federal Bureau of Investigation, whose specialty is the examination of items of gambling paraphernalia, testified that the playing cards had been marked with some type of invisible substance and when viewed with ultra violet light, the marks became visible. In addition, this witness testified that a person with astigmatism who wears glasses could identify the cards, while an average person might not. Furthermore, Special Agent Lind testified that a person in a position to identify the cards would have an advantage over another in a game of chance.

Special Agent Lind also testified that the dice confiscated were made of cellulose and this would indicate some type of metallic substance within the dice and, as a consequence, the dice are attracted to magnets, also confiscated, that are activated by depressing a button. While Special Agent Lind did not know whether this device functioned, for he had not had a chance to operate it, he concluded that this mechanism would increase the percentage that the operator of the house had in a game of chance.

In addition, Special Agent Lind testified that he had examined the "Honey" pinball machine which can be manipulated by the garage door opener, also confiscated from appellant's home, which sends a signal, when pressed, to a receiver located in the pinball machine which is hooked to the scoring mechanism. The device can arbitrarily advance the score without taking into account the position or movement of the steel balls on the playing surface of the machine.

Dr. Thomas E. Bell testified that he had been invited to the lake house of Cecil Hill and was further invited to participate in a "crap game." Dr. Bell stated that he lost $300.00 in this game which was participated in by Cecil Hill and others. During the course of the evening, Dr. Bell lost an additional $6,000.00 which had been loaned to him by one of the participants in the game. Dr. Bell further testified that he lost an additional $500.00 later on when he was encouraged to go back to the lake home of the appellant to play "black jack" in an effort to recover his huge losses.

We are convinced that there was sufficient evidence to warrant the trial court's action in submitting the case to the jury. Consequently, we find that the trial court did not err in denying appellant's motion for a directed verdict. *Moore* v. *State*, 244 Ark. 1197, 429 S.W. 2d 122 (1968); *Norton* v. *State*, 260 Ark. 412, 540 S.W. 2d 588 (1976).

Appellant further argues that the trial court committed error in appointing an attorney for one Herbert Thomas Wright, who had been called by the defense as a witness, so that Mr. Wright might be advised of his constitutional rights. Mr. Wright had been contacted by defense counsel and it was stated that the witness would testify that he had broken into Cecil Hill's home and installed the "juice joint" without the knowledge and approval of Cecil Hill. After the witness had consulted with counsel, the witness refused to answer the following question because it might tend to incriminate him:

"Q. I will ask you, then, if in that statement, did you admit that you installed a juice joint in the wall of Cecil Hill's lake cottage and a unit in the pinball machine at said lake cottage without the consent of Cecil . . . ?

In support of his argument, appellant relies upon *United States* v. *Smith*, 478 F. 2d 976 (D.C. Cir. 1976), in asserting that the defense witness was intimidated into not testifying and that the conduct on the part of the court was tantamount to the suppression of evidence. We are not impressed with this argument inasmuch as the facts in *United States* v. *Smith*, supra, are not on all fours with the facts in the instant case. In *Smith*, the prosecuting attorney told the witness that if he took the witness stand, he might be prosecuted for an offense

growing out of the situation in which the witness would testify about. Here, the trial judge took the initiative in seeing that the witness, who was an inmate at the Department of Correction, was advised of his constitutional rights by appointing counsel to consult with the witness.

Finally, appellant argues that during closing argument, the prosecuting attorney made the following statements:

"Have you heard any evidence to controvert the State's?"

"Have you heard any evidence that would controvert a finding of guilty?"

"Now, if there was something wrong with what Agent Lind talked, what he professed to tell you about in his demonstration, I didn't see any evidence coming from that stand and controverted, did you?"

"No, I didn't hear any evidence to controvert his testimony."

"I didn't hear any testimony or see any evidence to controvert anything the State showed you. No, Mr. Hill didn't start to gain, didn't start to gain . . . "

"I'm looking right at them when I tell them. I'm not embarrassed by it . . . "

"There is not one shred of evidence or testimony to controvert the guilt of Cecil B. Hill . . . "

Appellant cites our recent case of *Adams* v. *State*, 263 Ark. 536 (1978) in support of his argument for reversal.

It is clear from the record that appellant made no objection to the remarks complained of at the time these remarks were uttered by the prosecuting attorney before, but came after the jury had retired to deliberate on its verdict and appellant requested the court to call the jury back into the courtroom in order to deal with this objection. It is plain that appellant's objection came too late and we find that the trial

court did not err in denying appellant's request. An impropriety on the part of the State's attorney during closing argument should be objected to promptly and a delay in registering an objection to such impropriety, as here, is fatal. *Jones* v. *State*, 248 Ark. 694, 453 S.W. 2d 403 (1970).

Reversed in part and affirmed in part.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.