The Honorable David Bisbee State Senator 14068 Pyramid Drive Rogers, Arkansas 72758-0116
Dear Senator Bisbee:
I am writing in response to your request for my opinion on the following question:
 In light of the Fourth Amendment to the U.S. Constitution, does the State Fire Marshal's Office or a local fire marshal have the right to enter a building or premise[s] for a fire inspection under the State's Standard Fire Prevention Code without first obtaining a search warrant?
Specifically, you are concerned about the application of Rule 102.1 of the Standard Fire Prevention Code, which you report has been adopted by the State Fire Marshal's Office of the Arkansas Department of State Police, as well as by many local governments, and which provides as follows:
 102.1.1 Whenever necessary to make an inspection to enforce any of the provisions of this Code, or whenever the Fire Official has reasonable cause to believe that there exists in any building or upon any premises any condition or code violation which makes such building or premises unsafe, dangerous or hazardous, the Fire Official may enter such building or premises at all reasonable times to inspect the same or to perform any duty imposed upon the Fire Official by this Code, provided that if such building or premises is occupied, he shall first present proper credentials and request entry. If such building or premises is unoccupied, he shall first make reasonable effort to locate the owner or other persons having charge or control of the building or premises and request entry. If such entry is refused, the Fire Official shall have recourse to every remedy provided by law to secure entry.
 102.1.2 When the Fire Official shall have first obtained a proper inspection warrant or other remedy provided by law to secure entry, no owner or occupant or any other persons having charge, care or control of any building or premises shall fail or neglect, after proper request is made as herein provided, to promptly permit entry therein by the Fire Official for the purpose of inspection and examination pursuant to this Code.
RESPONSE
The recited provisions of the Standard Fire Prevention Code (the "Code") clearly anticipate that an inspector will be allowed access to premises during reasonable hours upon presenting his credentials and requesting entry. However, if the owner refuses access, the fire marshal may only enter forcibly in a limited range of circumstances. As a general proposition, absent exigent circumstances, warrantless, nonconsensual fire-code inspections of both private residences and the non-public areas of commercial buildings offend the prohibitions against unreasonable searches and seizures set forth in the U.S. and Arkansas Constitutions. A major exception to this rule exists in the case of certain highly regulated industries in which the regulations expressly call for such inspections. Although one portion of the Standard Fire Prevention Code (the "Code") might be read as impermissibly authorizing routine inspections outside the scope of this exception, the Code will support a contrary reading. I believe the Code provisions at issue anticipate that, in the rare instances when an inspector is denied entry, he should obtain a warrant before conducting a nonconsensual inspection.
The Fourth Amendment to the United States Constitution prohibits the states from conducting unreasonable searches and seizures.[1] In Camarav. Municipal Court, 387 U.S. 523 (1967), the Supreme Court held that a city housing inspector could not conduct a warrantless inspection of a private residence to determine compliance with a building's occupancy permit. In support of this ruling, the Court observed:
 [O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid warrant.
Id. at 528-29. In the companion case of See v. City of Seattle,387 U.S. 541 (1967), the Court reversed the appellant's conviction for refusing to allow a fire inspector entry into his locked warehouse without a warrant and without probable cause to suspect a code violation.387 U.S. at 541. The Court posed the question before it as follows:
 In Camara, we held that the Fourth Amendment bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his personal residence. The only question which this case presents is whether Camara applies to similar inspections of commercial structures which are not used as private residences.
Id. at 542. The Court concluded that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." Id. at 545.
In Hosto v. Brickell, 265 Ark. 147, 577 S.W.2d 401 (1979), the Arkansas Supreme Court discussed at some length the implications of these cases as applied to administrative searches:
 The constitutional prohibitions against searches are contained in Amendment 4 to the Constitution of the United States and in Art. 2, 15, of the Constitution of Arkansas. Protection is afforded only against unreasonable searches. South Dakota v. Opperman, 128 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Wickliffe v. State, 258 Ark. 544, 527 S.W.2d 640. . . . This does not mean that a search without a warrant is necessarily unreasonable and there are many well recognized types of warrantless searches that do not violate these constitutional protections. See Milburn v. State, supra; . . . Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The basic and essential purpose of these provisions is to protect the individual against unreasonable governmental intrusions into his privacy, whenever and wherever his expectation of privacy is legitimate. U.S. v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); South Dakota v. Opperman, supra; Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). . . . The reasonableness of a search in any case must be decided upon the basis of the existing facts and circumstances. Moore v. State, 244 Ark. 1197, 429 S.W.2d 122, cert. den. 393 U.S. 1063, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); South Dakota v. Opperman, supra. One of the most important factors to be considered is the existence, extent and legitimacy of the citizen's right to expectation of privacy under the circumstances. U.S. v. Chadwick, supra. . . .
 Administrative inspections without a warrant were substantially restricted by decisions in Camara v. Municipal Court, supra, and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943
(1967). In Camara, the decision was based upon the individual's right to be secure from arbitrary governmental invasion of his right to privacy. In See, it was made quite clear that an entry on commercial premises without a warrant cannot be justified purely on the basis of the difference between private residences and such premises, when the entry is upon those portions of the premises which are not open to the public. But it was made equally clear that the holding in that case did not imply that business premises may not reasonably be subject to inspections in many more situations than private homes would be. In addition, there was a further recognition, though not in specific words, of the greatly diminished expectation of privacy in a place of business where products are marketed under state licensing programs. The public interest requires careful consideration in applying reasonableness standards, according to Camara. The importance of surprise as a crucial aspect of routine inspections of business establishments was also recognized in See, and the Camara court considered the likelihood of frustration of the governmental purpose of the "search" by obtaining a warrant an important factor. See did not consider the reach of the Fourth Amendment with reference to statutes regulating a business which is subject to close supervision and regulation in the public interest, and for which a license is required. U.S. v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87
(1972).
* * *
 An excellent summation of the circumstances under which a warrantless search will meet the test of reasonableness was made by the Supreme Court of New Mexico in State v. Albuquerque Publishing Co.,
[571 P.2d 117 (N.M. 1977)], supra. That court said:
 * * * In so doing, we hold that a nonconsensual, warrantless administrative inspection of business premises can be made only when: (1) the enterprise sought to be inspected is engaged in a business pervasively regulated by state or federal government; (2) the inspection will pose only a minimal threat to justifiable expectations of privacy; (3) the warrantless inspection is a crucial part of a regulatory scheme designed to further an urgent government interest; and (4) the inspection is carefully limited as to time, place and scope.
265 Ark. at 151-54.
The Eighth Circuit Court of Appeals elaborated on this standard in UnitedStates v. Agrusa, 541 F.2d 690, 697-98 (8th Cir. 1976):
 Business premises, while entitled to protection under the Fourth Amendment, are not entitled to the same protection which is afforded a home. See v. Seattle, 387 U.S. 541, 545-46, 87 S.Ct. 1737, 18 L.Ed.2d 943
(1967). Also, premises which are vacant at the time searched are, in respects here material, less protected constitutionally than are occupied premises. What authority there is holds that unannounced and forcible entries into vacant premises, even homes, in order to conduct a search, are constitutional in the absence of exigent circumstances, provided that the search and seizure is pursuant to warrant and reasonable under the circumstances. Payne v. United States, 508 F.2d 1391, 1394 (5th Cir. 1975), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263
(1975); United States v. Gervato, 474 F.2d 40 (3d Cir. 1973), vacating 340 F. Supp. 454 (E.D. Pa. 1972), cert. denied, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973).
This pronouncement is in all respects consistent with the following fromRice v. Wolff, 513 F.2d 1280 (8th Cir. 1975):
 In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943
(1967), the Supreme Court recognized that probable cause is the constitutional measure of the reasonableness of a search, but modified the degree of probable cause required to make an administrative search reasonable by focusing on the governmental interest sought to be furthered by that type of search: for example, a non-hostile search by health or fire officials to preserve the health and safety of all residents.
The most recent development in Fourth Amendment law dealing with administrative searches was set forth in New York v. Burger,482 U.S. 691, 699-700 (1987):
 The Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. See v. City of Seattle, 387 U.S. 541, 543, 546 (1967). An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable, see Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-313 (1978). An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. See Donovan v. Dewey, 452 U.S. 594, 598-599 (1981). This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. The Court observed in Marshall v. Barlow's Inc.: "Certain industries have such a history of government oversight that no reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351-352 (1967), could exist for a proprietor over the stock of such an enterprise." 436 U.S. at 313.
Based on this reasoning, the Court modified its ruling in See that an administrative search of commercial property must generally be supported by a warrant, carving out an exception for "closely regulated" industries in which the regulatory schemes expressly authorize warrantless searches, thus protecting the commercial operator's privacy interest.482 U.S. at 418-19.
In my opinion, Camaro, See and Burger comprise a trilogy that provides the guidelines for determining in each particular instance when a warrantless inspection might be warranted. Any such determination will necessarily turn on the facts of each case. Among the factual issues to be considered are whether the inspection is justified by exigent circumstances; whether the structure to be inspected is a private dwelling; if the structure is a business, whether the areas to be inspected are open to the public; whether the structure is occupied at the time of inspection; and whether the inspection itself is part of an established, reasonable and publicized regulatory scheme.
It follows from the foregoing that any general rule authorizing nonconsensual, warrantless fire inspections would be constitutional only with respect to closely regulated industries. The question remains whether the Code provisions recited at the beginning of this opinion constitute a general, and hence constitutionally impermissible, authorization of nonconsensual, warrantless inspections for any and all structures. In my opinion, Section 102.1.2 is constitutionally unobjectionable, since it merely provides that an owner must allow entry for inspection when presented with a properly issued warrant. Notwithstanding the fact that the absolute right of access will turn on obtaining a warrant, I think this provision anticipates that in most instances an owner will voluntarily afford a properly credentialed inspector access for the purpose of inspection. Moreover, I believe there is probably no constitutional problem with the provision in Section 102.1.1 authorizing "necessary" inspections when the inspector has "reasonable cause" to believe a violation exists that renders a building "unsafe, dangerous or hazardous." In my opinion, this provision can reasonably be read as merely acknowledging the right to effect a warrantless entry when exigent circumstances exist.
By contrast, I am slightly troubled by the disjunctive authorization in Section 102.1.1 of an inspection "[w]henever necessary . . . to enforce any of the provisions of this Code." To the extent this provision might be read as authorizing routine, nonconsensual warrantless compliance checks of residences and non-public areas of commercial structures, I believe it might well run afoul of the principles set forth above. However, this objection might itself be cured by the final sentence of Section 102.1.1: "If such entry is refused, the Fire Official shall have recourse to every remedy provided by law to secure entry." Insofar as forced entry is permissible only under very limited circumstances, including in response to exigencies or by authority of a warrant, this provision would appear to mandate compliance with the authorities discussed above. Accordingly, I believe the provision authorizing inspections "whenever necessary" to enforce the Code is best read as only defining what will constitute probable cause to conduct a search. If the owner denies access, I believe the inspector will normally need to establish that necessity by obtaining a warrant before entering the premises — a conclusion bolstered by Section 102.1.2, which provides that the owner loses his right to deny entry only when presented with a duly issued warrant. Of course, I am neither situated nor authorized to determine whether fire marshals in fact interpret the rule as imposing this restriction.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] In McDonell v. Hunter, 809 F.2d 1302, 1305 (8th Cir. 1987), the Eighth Circuit Court of Appeals observed:
 The fourth amendment imposes a "standard of `reasonableness' upon the exercise of discretion by government officials." Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case its requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).